Richard C. THRONDSET, Director of Burleigh County Social Service Board, R. S. C., and Dan Houfek, as Guardian ad Litem for A. B. S., a minor child, Plaintiffs and Appellees,

v.

J. R., Defendant and Appellant.

Civ. No. 9851.

Supreme Court of North Dakota.

Feb. 24, 1981.

Patricia L. Burke, Asst. State's Atty., Bismarck, for plaintiffs and appellees.

William R. Mills, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

J. R. [hereinafter "Roe," a pseudonym] appeals from a judgment entered by the district court of Burleigh County determining him to be the natural father of A. B. S. [hereinafter "Ada," a pseudonym] and from an order denying Roe's motion to vacate said judgment.[1] We reverse and remand.

A summons and complaint seeking to establish the paternity of Roe was personally served upon Roe. He did not answer or otherwise appear. The plaintiffs [hereinafter "Social Service"] moved for default judgment. Roe received notice of the motion but did not appear or respond thereto. Judgment was entered on December 17, 1979, and notice of entry of judgment was served upon Roe by mail on December 19, 1979. The judgment, in addition to determining that Roe was the father of Ada, required Roe to pay $125 a month for the support of Ada until she reaches the age of 18, and granted the Burleigh County Social Service Board judgment in the amount of $12,953 for the sums expended for Ada's care and maintenance prior to that time. The judgment required the monthly support payments to be made to the Burleigh County clerk of the district court. Roe failed to pay support as required by the judgment. The clerk of court sent a notice of arrearage to Roe by certified mail. The notice provided that if Roe did not pay the amount in arrears within 10 days after receipt of the notice a citation ordering Roe to show cause why he should not be held in contempt of court would be sought. After Roe failed to pay the amounts ordered by the judgment, a citation and order to show cause was issued by the district court requiring Roe to appear in court to show cause why he should not be adjudged in contempt of court for failure to make the payments. Roe appeared, without counsel, at the time set for the order to show cause to be heard and the matter was continued to permit Roe to obtain counsel. Roe obtained counsel and subsequently a motion to vacate the default judgment was filed, accompanied by a proposed answer, affidavit of merits, and affidavit of grounds. A hearing was held on the motion to vacate the default judgment. An order denying the motion to vacate the default judgment was issued and this appeal resulted.

Roe's primary argument on appeal is that he should be allowed a trial on the merits. Rule 60(b), N.D.R.Civ.P.,[2] specifies the pro-

---

1. Roe's notice of appeal, dated August 21, 1980, states the appeal is "from the Judgment entered in this action on the 11th day of December, 1979, and the Order Denying the Motion to Vacate said Judgment, said Order dated the 23rd of June, 1980." The record reflects that proper notice of entry of the default judgment was served on Roe on December 19, 1979. The time for appeal from the judgment had expired by the time the notice of appeal was filed. Rule 4, N.D.R.App.P. The time for appeal from the order denying the motion to vacate the default judgment had not expired by the time the notice of appeal was filed.

2. Rule 60(b), N.D.R.Civ.P., provides:
"(b) *Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceed-

ing for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment or order was entered in the action or proceeding. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

cedure to be followed in seeking relief from a judgment. Roe's affidavit of merits would appear to seek relief under the first reason set forth in Rule 60(b), i. e., "excusable neglect," as well as the sixth reason, i. e., "any other reason justifying relief from the operation of the judgment." In his affidavit of merits Roe alleges that R. S. C., the mother of Ada, was "going out" with men other than himself; that she would go to bars, get drunk, and not know whom she was with; that Roe had seen her "sleeping with a guy on a davenport" during the period of March 1975 to January 1976; and that Roe believes he has an excellent chance of proving through blood tests that he is not the father of the child. In his affidavit of grounds, Roe alleges, in part:

"2. That your affiant has had only a fifth grade education and does not understand Court papers.

"3. . . .

"4. That he received some papers from welfare and went and saw them and talked to them. That your affiant did not know that a person could get into trouble over child support if he did not marry the mother. That he then went to welfare and they gave him some more papers but he did not realize what they were. He was told at welfare that there could be blood tests taken to find out if he was the father of the child but that he would have to pay for half the costs of it. He was trying to save up enough for his half and as time went by he thought that welfare had forgotten about him. That he had not conferred with a lawyer because he did not have the money to hire a lawyer and he did not know he needed one.

"5. That on or about the 21st of April he understood from his citation, an Order to Show Cause, the seriousness of this situation and immediately contacted counsel. That the attorney checked on the matter and explained the suit situation to your affiant and that your affiant thereupon promptly hired said attorney to proceed as necessary to protect your affiant's rights."

Roe notes, with respect to point No. 4 of the affidavit of grounds, that prior to the service of the summons and complaint resulting in the default judgment at issue, i. e., in early 1979, he received some papers from "welfare" concerning his paternity of Ada and that he contacted the Regional Child Support Enforcement Unit and discussed the possibility of having blood tests taken to assist in determining paternity but that nothing more was done. This is conceded by Social Service. They explain that a proceeding to have Roe declared the father of Ada and to require him to pay support for her maintenance was begun in early 1979 but was dismissed later after R. S. C. had married and Social Service no longer was responsible for Ada's maintenance. After R. S. C. and her husband separated an application was again made to Social Service for aid to dependent children in the current proceeding, which resulted in the default judgment, commenced in October 1979. Roe's argument is that he received some papers from Social Service concerning this matter of paternity and support previously and because that action was not pursued he had no reason to believe this second action was of any more significance. He points out that he does not understand court papers, that he had not conferred with a lawyer because he did not have the money to hire a lawyer and did not know he needed one. Social Service counters with the apparently conceded fact that Roe has previously been divorced, that he allowed

Leave to make the motion need not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Rule 4(g)(8) of these rules, or to set aside a judgment for fraud upon the court. Writs of coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

that proceeding to go to default, and subsequently obtained an attorney to represent him in that matter, indicating his familiarity with default judgments in court proceedings.

The trial court determined that although Roe may not have fully comprehended all the consequences of the proceeding that was commenced against him, Roe was aware that a legal proceeding was commenced and that the function of a lawyer is to provide aid and guidance to persons who have been served with the papers commencing such an action. The trial court noted:

"It plainly appears here that we are not dealing with a matter of forgetfulness or excusable neglect, but rather a course of intentionally ignoring successive steps of an ongoing legal proceeding."

All parties concede that whether or not a judgment should be vacated is a matter of discretion for the trial court, and the test generally employed by this court in reviewing a trial court's denial of a motion for relief from a default judgment under Rule 60(b), N.D.R.Civ.P., is whether or not the district court abused its discretion. *Svard v. Barfield*, 291 N.W.2d 434 (N.D.1980). Roe cites our decision in *Svard* and points to the fact that we approved a policy of having each case decided on its merits and that we treat applications to open default judgments somewhat more leniently than applications to reopen judgments entered after contested trials. *Svard* and the cases cited therein do support those policies. They are not, however, absolute keys to relief from a default judgment. In *Svard* we based our decision on the fact that the defendant had entered an "appearance" within the meaning of Rule 55, N.D.R.Civ.P.,[3] and as a result he was entitled to notice of at least 8

days prior to the hearing on the application for a default judgment under that rule. Because the defendant in *Svard* did not receive the required notice we concluded the trial court should have denied the application for default judgment.

█ Roe received a notice of application for default judgment in this instance. The notice was served by mail on November 30, 1979.[4] The hearing was set for December 10, 1979, and Roe argues that he did not receive the required 8-day notice because under Rule 6(e), N.D.R.Civ.P., three days must be added to the prescribed period when service is by mail. Social Service argues, however, that the service of notice of application for default judgment in this instance was a "courtesy" because Roe made no "appearance" in the proceeding within the meaning of Rule 55, N.D.R. Civ.P., and therefore the holding in *Svard* is not applicable in this instance. We agree with Social Service that Roe made no appearance in this proceeding, and we cannot construe his contact with Social Service in the previous proceeding, which was dismissed without prejudice, as constituting an appearance in the present action resulting in a default judgment. Therefore, the requirement of notice in Rule 55(a)(3), N.D.R. Civ.P., is not applicable and the notice actually served on Roe, if it was not timely, does not entitle him to have the default judgment set aside. An examination of the facts in *Svard* indicates that the defendant met with the plaintiffs for the purpose of negotiating the dispute involved in the lawsuit. This court concluded that the meeting constituted an appearance within the scope of Rule 55(a)(3), N.D.R.Civ.P. Here, Roe contacted Social Service in the first action, which was subsequently dismissed. That

3. Rule 55(a)(3), N.D.R.Civ.P., provides:

"(3) No judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the

application for judgment at least 8 days prior to the hearing on such application."

4. The affidavit of mailing of the notice to Roe states it was mailed December 30, 1979, although the notarization reflects the affidavit was sworn to on November 30, 1979. It is apparent that the notice was actually mailed on November 30, 1979, and that the statement in the affidavit is a clerical error.

contact may have constituted an appearance for the purpose of that action, but once that action was dismissed without prejudice and, several months later a new action was commenced, the appearance became ineffective. More significantly, the defendant in *Svard* received no notice of any kind of plaintiff's application for default judgment and the defendant's affidavit alleged that after defendant's meeting with the plaintiff the defendant believed all difficulties had been resolved. In this instance Roe argues that he did not receive the notice of application for default judgment in the time specified by the rules of civil procedure, but he does not deny that he did, in fact, receive such notice prior to the time of the default hearing.

■ In *Suburban Sales v. District Court of Ramsey*, 290 N.W.2d 247 (N.D.1980), we discussed various decisions of this court applying the abuse-of-discretion standard used in reviewing the decision of a trial court to vacate a default judgment. We noted we had found no cases in which this court held that the trial court had abused its discretion in vacating a judgment but that in several instances this court held that the trial court abused its discretion in refusing to vacate a judgment. We have reviewed the cases referred to in *Suburban Sales* and we find little comparison in facts which would justify a conclusion that the trial court abused its discretion in refusing to vacate the default judgment for the sole reasons advanced by Roe.

■ Roe contends that the claim by Social Service for $12,953 could be brought within only three years of Ada's birth and, because this action was commenced more than three years from her birth, that portion of the judgment should be set aside. Roe bases his argument on Section 14–17–06, N.D.C.C.[5]

Roe argues that only the child may bring an action to have his paternity established after the three-year period has elapsed. This argument ignores the plain language of Section 14–17–06 which provides that an action brought by or "*on behalf* of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority." Section 14–17–08, N.D.C.C., requires that a child is to be made a party to an action to determine the existence of the father-and-child relationship and that if the child is a minor he must be represented by his general guardian or a guardian ad litem appointed by the court. The record reflects the petition seeking that appointment specified the action was "for the purpose of establishing paternity of [A. B. S.], . . ." Ada, through her guardian ad litem, was a party plaintiff in the action as required by Section 14–17–08, N.D.C.C. We find no merit in Roe's contention that the action was not brought within the time permitted by Section 14–17–06, N.D.C.C.

■ Roe also argues that the award of judgment to Social Service in the amount of $12,953 is not authorized. Section 14–17–06 is not a limitation on the right of Social Service to recover the amounts it has expended for Ada's care and maintenance. Once paternity is decreed the limitation contained in Section 14–17–06 does not bar Social Service from recovery, in the same action, of the amounts expended for Ada's care and maintenance. See Section 14–17–16(1) and Chapter 14–08.1, N.D.C.C.

■ If the judgment required only that Roe make the monetary payments discussed above, we would affirm the trial court's refusal to vacate the judgment. However,

5. Section 14–17–06, N.D.C.C., provides:
   "An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later. However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority. Sections 14–17–05 and 14–17–06 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise."

we believe that the order denying the motion to vacate the default judgment should be reversed for another reason. The judgment also requires the Registrar of Vital Statistics to prepare an amended birth certificate indicating that Roe is the natural father of Ada. That requirement is in accordance with Section 14–17–22, N.D.C.C. Our concern is with the effect of such an order on Ada as she matures and becomes an adult. Paternity may be denied by the putative father or a man determined to be the father after judicial proceedings. That denial may well have a more detrimental effect on a child when the judicial proceedings have culminated in a default judgment which the court has refused to vacate upon the request of a man who wishes to have blood tests taken to determine his parenthood and who seemingly questions whether or not he is the actual father of the child. Our concern is with Ada rather than with Roe.

We are aware that Ada was represented in this matter by a guardian ad litem. We are also aware that the application for appointment of a guardian ad litem for Ada was made by the director of the Burleigh County Social Service Board and that the plaintiffs, including Ada, were represented by the Burleigh County State's Attorney's office. All of these actions were proper and we do not imply otherwise. However, it is apparent that the plaintiffs were concerned primarily with the immediate support of Ada and perhaps not so much with the effect this determination may have on Ada as she matures into an adult. We therefore believe it is preferable that the matter of Roe's paternity of Ada be determined in a judicial proceeding rather than by default judgment so that this cloud at least will be removed from Ada's birth record and from her future.

The order of the district court denying the motion to vacate the default judgment is reversed and the matter is remanded for a trial on the merits.

ERICKSTAD, C. J., and PAULSON, PEDERSON and SAND, JJ., concur.