472 N.W.2d 222 (1991)
In the Interest of the Minor Child M.Z.
STARK COUNTY SOCIAL SERVICE BOARD or any Successor County, L.J. Bernhardt, Director, and D.A.Z., Petitioners and Appellees,
v.
R.S., Respondent and Appellant.
Civ. No. 900413.
Supreme Court of North Dakota.
June 25, 1991.
Diane F. Melbye (argued) of Melbye Law Office, Dickinson, for petitioners and appellees.
Howe, Hardy, Galloway & Maus, P.C., Dickinson, for respondent and appellant; argued by Mary E. Nordsven.
LEVINE, Justice.
R.S. [hereinafter "Robert," a pseudonym] appeals from an order of the district court of Stark County denying his motion to compel D.Z. [hereinafter "Donna," a pseudonym] and the minor child M.Z. [hereinafter "Mark," a pseudonym] to take genetic tests to determine whether Robert is Mark's natural father. We affirm.
Robert and Donna began living together in a home in Dickinson during May 1982 and in February 1983, Donna gave birth to Mark. Donna subsequently gave birth to two other children while she and Robert were residing together, but those children are not involved in this controversy.
Shortly after Mark was born, the Stark County Social Service Board filed a petition against Robert in district court seeking a determination of paternity and reimbursement of support payments. Robert, who at that time was seventeen years old, stipulated that he was Mark's natural father and agreed to pay child support for Mark. A judgment incorporating that stipulation was entered on July 14, 1983.
Almost seven years later, on March 1, 1990, Robert filed a motion requesting the district court to compel Donna and Mark to submit to genetic tests for the purpose of determining whether Robert was Mark's natural father. In support of the motion, Robert filed an affidavit merely stating, "Recently, I have had reason to suspect that I may not be the father of said child and therefore I am requesting that this Court require blood tests to be taken...." Robert appeals from the trial court's order denying the motion.
Robert asserts that the trial court erred in denying the motion because the court is required to grant a party's request for genetic tests under Subsection 14-17-10(1), N.D.C.C., which says in part:
"The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to genetic tests, including tests of blood or other tissues."
In construing a statute, we consider the entire enactment of which it is a part and, to the extent possible, interpret the provision consistent with the intent and purpose *223 of the entire Act. Production Credit Ass'n of Minot v. Lund, 389 N.W.2d 585 (N.D.1986). In determining legislative intent, the court may consider such matters as the objects sought to be obtained, the statute's connection to other related statutes, and the consequences of a particular construction. State v. Moen, 441 N.W.2d 643 (N.D.1989). Statutes must be construed logically so as not to produce an absurd result. Fireman's Fund Mortgage Corporation v. Smith, 436 N.W.2d 246 (N.D.1989).
Chapter 14-17, N.D.C.C., is entitled Uniform Parentage Act. It sets forth both procedural and substantive directives for adjudicating parentage. Subsection 14-17-10(1), N.D.C.C., must be construed as a whole in the context of Chapter 14-17, N.D.C.C. So construed, it is only logical to conclude that it requires the court to order genetic tests only when the request for tests is made while proceedings are pending to adjudicate parentage under the chapter. We do not believe the statute requires the court to compel genetic tests in response to a post-judgment motion, after parentage has been adjudicated. There would be no finality to parental adjudications if we construed the statute as urged by Robert.
Other sections under Chapter 14-17, N.D.C.C., support this interpretation. Under Subsection 14-17-14(1), N.D.C.C., the judgment or order of the court determining the existence or nonexistence of a parent-child relationship is "determinative for all purposes." Under Section 14-17-17, N.D.C.C., the court is given limited continuing jurisdiction to modify a judgement or order "[f]or future education and support" and "[w]ith respect to matters listed in subsections 3 and 4 of section 14-17-14 and subsection 2 of section 14-17-16." The court's continuing jurisdiction under this provision does not extend to judgments or orders determining the parent-child relationship under Subsection 1 of Section 14-17-14, N.D.C.C. Clearly, the Legislature intended to provide finality to determinations about the existence of a parent-child relationship.
This case is distinguishable from Throndset v. J.R., 302 N.W.2d 769 (N.D.1981), in which paternity was established through a default judgment. The adjudicated father thereafter filed a motion under Rule 60(b), N.D.R.Civ.P., seeking to vacate the default judgment and to have a trial on the merits of the paternity issue. Reversing the trial court's denial of the motion, we held that it was preferable for the issue of paternity to be determined in a judicial proceeding rather than by default judgment.
In this case, adjudication of paternity was not by default. It was based upon Robert's appearance and his stipulation that he is Mark's natural father.
We are not persuaded that the trial court erred in denying the request for compelled genetic tests and, accordingly, the trial court's order is affirmed.
ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.
VANDE WALLE, J., concurs in the result.