**Daniel P. Richter, Director of Ward County Social Service Board, Plaintiff and Appellant,**

**v.**

**S.B., Defendant and Appellee.**

**No. 20030034.**

Supreme Court of North Dakota.

June 3, 2003.

Leah Jo Viste (argued) and Tina M. Heinrich (appeared), Assistant State's Attorneys, Minot, N.D., for plaintiff and appellant.

S.B. (argued), pro se, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] The Ward County Social Service Board ("Ward County") appealed from an order directing Ward County, through the office of child support enforcement, to conduct paternity testing for K.L.B. ("Kathy"), S.B. ("Scott"), and D.F. ("Dan").[1] We vacate the order and remand with directions the court hold a hearing for purposes of determining whether the court should vacate a December 11, 2001, judgment under N.D.R.Civ.P. 60(b) and entertain proceedings to determine Dan's paternity.

I

[¶ 2] Kathy and Scott were married on September 4, 1993, and they separated in 1996. Dan was born on July 8, 2001. Kathy received financial assistance from Ward County and assigned to it her support rights against the child's father. In October 2001, Ward County filed a complaint seeking child support from Scott. He did not make an appearance for the child support proceedings. Kathy appeared at the hearing and testified Scott was likely not the father of Dan. Ward County indicated it would not resist blood tests if the court ordered them but recommended the court enter a default judgment against Scott, relying on the statutory presumption of paternity. The court entered judgment ordering Scott to pay child support of $168 per month, plus an additional $20 per month towards $840 of child support arrearages. Judgment was entered on December 11, 2001. No appeal was taken from that judgment.

[¶ 3] Scott wrote to Judge Everett Nels Olson asking him "to stop the child support for the child that isn't mine and a refund of all monies paid in." Judge Olson responded, in a letter dated March 12, 2002:

Your recent letter to the Court indicates a misconception that it is the Minot Regional Child Support Office that has taken the position as an agency, that you are the natural father of [Dan]. Actually, it is North Dakota law that presumes you to be the father. I enclose N.D.C.C. § 14–17–04 for your consideration. An action brought for the purpose of declaring the nonexistence of a father and child relationship is authorized under N.D.C.C. § 14–17–05 (attached).

Because no action is currently pending to declare the nonexistence of a father and child relationship, I will be making no further response to your correspondence. If you have any additional questions, I would suggest that you seek assistance from an attorney.

[¶ 4] In a second letter to Judge Olson, dated November 5, 2002, Scott asserted he was not Dan's father, and he asked for a hearing on the issue. Judge Olson recused himself, and the presiding judge reassigned the case to Judge Gary A. Holum. Without holding a hearing or conducting further proceedings, Judge Holum wrote a letter on December 4, 2002, ordering Ward County to conduct, through its

---

1. The names of these parties are pseudonyms.

office of child support enforcement, appropriate testing to determine paternity of Dan.[2]

[¶ 5]   On December 16, 2002, Scott sent Judge Holum another letter requesting "suspension" of child support billings for an older child Scott and Kathy had together during the marriage, claiming he had custody of the child.   Judge Holum responded by letter on December 18, 2002, acknowledging Scott's letter and stating, "[o]nce the results are in from the paternity testing I will rule on your most recent letter."

## II

[¶ 6]   If the court's order directing paternity tests to be conducted by Ward County had been entered in a pending action, it would be an interlocutory order that does not resolve issues of paternity or child support.   As an interlocutory order it is not appealable.   *See Dimond v. State Board of Higher Education*, 1999 ND 228, ¶ 9, 603 N.W.2d 66.   We therefore dismiss the appeal.

[¶ 7]   However, dismissal of the appeal would leave standing an order entered outside the context of a properly pending action.   Therefore, to prevent a distortion of justice, we treat Ward County's attempted appeal as a request for us to exercise our original jurisdiction and our authority to supervise the district court.   *See Boedecker v. St. Alexius Hospital*, 298 N.W.2d 372, 374 (N.D.1980).   The court neither held a hearing on Scott's request, nor did it rule on the appropriateness, under the circumstances, of vacating the judgment and conducting further proceedings.   We conclude the district court failed to follow appropriate procedure or sub-

stantive law in entering its order requiring Ward County to conduct paternity tests. We, therefore, vacate the order.

## III

[¶ 8]   This Court favors determinations on their merits and has approved the vacating of a default judgment of paternity when circumstances justified it under a properly raised motion for relief from the judgment under N.D.R.Civ.P. 60(b).   *Throndset v. J.R.*, 302 N.W.2d 769, 772 (N.D.1981).   In *Throndset*, 302 N.W.2d at 774, this Court stated:

> Paternity may be denied by the putative father or a man determined to be the father after judicial proceedings.   That denial may well have a more detrimental effect on a child when the judicial proceedings have culminated in a default judgment which the court has refused to vacate upon the request of a man who wishes to have blood tests taken to determine his parenthood and who seemingly questions whether or not he is the actual father of the child. . . . .

> We therefore believe it is preferable that the matter of Roe's paternity of Ada be determined in a judicial proceeding rather than by default judgment so that this cloud at least will be removed from Ada's birth record and from her future.

[¶ 9]   Although Scott did not file a formal Rule 60(b) motion in this case, the court could treat his November 5, 2002, letter as a motion to vacate the December 11, 2001, judgment.   *See Green v. Green*, 1999 ND 86, ¶ 6, 593 N.W.2d 398; *Neubauer v. Neubauer*, 524 N.W.2d 593, 594–95 (N.D.1994).   However, the district court, prior to ordering paternity testing,

2. This Court has previously commented on the practice of proceeding in an informal manner which confuses litigants as to the procedures to be followed and makes uncertain the status of directives given by the trial court.   *See In re Griffey*, 2002 ND 160, ¶ 4 n. 1, 652 N.W.2d 351.

did not have a hearing and made no findings that the circumstances justified vacating the 2001 judgment. Under these circumstances, and to prevent a miscarriage of justice, we direct the district court to treat Scott's November 5, 2002, letter as a request to vacate the December 11, 2001, judgment. The court must hold a hearing after Ward County and Kathy have received appropriate notice and have had an opportunity to respond. The court can then make a decision whether, under the circumstances, the judgment should be vacated. If the December 11, 2001, judgment is vacated, the child support issue remains pending and unresolved.

[¶ 10] Scott was ordered to pay child support for Dan because he was married to the child's mother and was, therefore, presumed to be the natural father under N.D.C.C. § 14–17–04(1)(a). The presumption may be rebutted, under N.D.C.C. § 14–17–05(1), by the man who is presumed to be the child's father, upon bringing an action within a reasonable time, but not later than five years after the child's birth. Thus, Scott is an appropriate party to contest his presumed paternity of Dan. Under N.D.C.C. § 14–17–10, the district court is authorized to order genetic tests for determining paternity either on its own motion or when requested by a party, providing the court orders the testing be performed "by a laboratory approved by ... an accreditation body." However, the statute requires the court to order genetic tests only if the request for tests is made when proceedings are pending to adjudicate parentage under the chapter. See In Interest of M.Z., 472 N.W.2d 222, 223 (N.D.1991).

## IV

[¶ 11] We dismiss the attempted appeal from the interloctuory order. Under our supervisory authority we vacate the order and remand with directions the court hold proceedings to determine whether to vacate the December 11, 2001, judgment under N.D.R.Civ.P. 60(b). If the court vacates the judgment, Scott can take further steps to contest paternity and the court can order genetic testing in accordance with the provisions of N.D.C.C. ch. 14–17.

[¶ 12] Order vacated and case remanded with instructions.

[¶ 13] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.