Richard C. THRONDSET, Director, Burleigh County Social Service Board as assignee for S.J., S.J., a/k/a S.P., Plaintiffs and Appellees,

v.

L.L.S., Defendant and Appellant.

Civ. No. 910309.

Supreme Court of North Dakota.

May 11, 1992.

Paulette E. Oberst, Sp. Asst. State's Atty., Bismarck, for plaintiffs and appellees.

Gregory Ian Runge, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Larry, a pseudonym for L.L.S., appealed from a district court order denying his Rule 60(b), N.D.R.Civ.P., motion to vacate a September 10, 1982, summary judgment declaring him to be the father of Carl, a pseudonym for C.B.J., and ordering him to pay $150 per month for child support. We affirm.

While Sally, a pseudonym for S.A.J., was pregnant with Carl in September 1980, Larry went to the Bismarck office of the Regional Child Support Enforcement Unit and signed an acknowledgment of paternity. According to Larry, the person at the office explained the acknowledgment of pa-

ternity papers to him because "[h]e wanted to make sure I knew what they were." Sally gave birth to Carl on February 18, 1981.

During March 1981, Larry filled out and returned to the Regional Child Support Enforcement Unit a "respondent's questionnaire" documenting his financial resources. In March 1982, the Burleigh County Social Service Board [Board], as assignee of Sally's support rights, brought an action against Larry to have him adjudged the father of Carl, to have him pay $150 per month for child support, and to have him reimburse the Board for the Aid to Families with Dependent Children [AFDC] benefits paid to Sally.[1] Larry, acting pro se, responded by letter to the complaint and requested blood tests "to find out for sure if [Carl] is my son...." In April 1982, Larry signed a "Stipulation for Blood Tests and Admission into Evidence" acknowledging that he was "informed of his right to obtain legal counsel and has had opportunity to secure legal counsel and he understands that the Plaintiff's attorney does not represent him." The results of the blood tests showed a 99.749 percent likelihood that Larry is Carl's father.

The Board then moved for summary judgment, and a hearing on the motion was held on August 23, 1982. Larry did not respond to the motion or attend the hearing. The Board's attorney informed the court that when Larry appeared in his office on July 7, 1982, to obtain another respondent's questionnaire, he advised Larry to attend the scheduled summary judgment hearing and that "the judge would make his decision and judgment at that time, establishing support."

---

1. The amended complaint states the action "is brought pursuant to the provisions of Chapter 14–08.1 of the North Dakota Century Code." That chapter is entitled "Civil Remedies For Child Support" and presumably was cited because Larry had previously acknowledged paternity. Nevertheless, the amended complaint also sought to have Larry "be adjudged the father of [Carl]...." The brief in support of the Board's motion for summary judgment declared that Larry "should be adjudged the father of said

child under the North Dakota Century Code Section 14–08.1" and the court's judgment decreed that Larry "shall be adjudged the father of [Carl]...." Chapter 14–17, N.D.C.C., North Dakota's version of the Uniform Parentage Act, sets forth the methods of establishing parenthood, including by action. Despite the statements in the complaint, we believe the action to have Larry declared Carl's father [as contrasted with the request for support] is governed by Chapter 14–17.

At the hearing, the trial court received in evidence the results of the blood tests and an affidavit documenting the amount of AFDC benefits paid to Sally in the past. The Board's attorney informed the trial court that Larry had an intermittent work history. The latest respondent's questionnaire, indicating that Larry was presently unemployed, was not offered in evidence.

On September 10, 1982, the trial court granted summary judgment against Larry, adjudging him to be Carl's father, ordering him to pay $150 per month for child support, and ordering him to pay an additional $1,716 in arrearages. During the ensuing years numerous proceedings were brought against Larry in an effort to enforce his child support obligation, including a Uniform Reciprocal Enforcement of Support Act petition filed in South Dakota. Larry attended most of these hearings and, although his $150 monthly child support obligation was not changed and continued to accrue, adjustments were sometimes made in his monthly payments to account for periods when he was unemployed. However, the only child support payments ever received from Larry during this time were obtained through Internal Revenue Service income tax refund intercepts, employer withholding, and withholding from some Workers Compensation benefits.

On June 12, 1991, Larry moved to vacate the September 1982 judgment under Rule 60(b)(vi), N.D.R.Civ.P., on the ground that the trial court had failed to appoint Larry an attorney to defend him in the action pursuant to § 14-17-18(1), N.D.C.C., and which, Larry contended, resulted in an excessive child support obligation.

During the hearing on the motion, Larry testified that he had dropped out of high school in the eleventh grade and that he was unable to afford to hire his own attorney at the time. He said that he was never advised of his right to have court-appointed counsel. He testified that he inquired about court-appointed counsel, but was informed by someone in the municipal court clerk's office that counsel was appointed for defendants in criminal cases only. He said that he did not learn of his right to court-appointed counsel until 1990 when he contacted his present attorney.

Larry also testified that he did not receive notice of the summary judgment motion because he had moved to a different address after he received the last respondent's questionnaire. Larry also expressed "doubt" that Carl was his child. Although Larry admitted having sexual intercourse with Sally, he testified that "she was also going out with other people at the same time." Larry further testified that in 1986 he married a woman with three children, that the couple has had two more children since then, and that "I've got a family of my own now which, when I am working, the child support takes most of my money away from my family."

The trial court denied Larry's motion to vacate the judgment, reasoning:

"Regardless of whether there was a notice of right to counsel, the court finds:

"1. [Larry] knew before judgment was entered that he could have counsel appointed for him;

"2. [Larry] chose, by inaction or affirmative decision, to not have counsel and to not appear at the hearing requesting judgment;

"3. [Larry's] claim for relief is not timely and is barred by laches;

"4. [Larry], having made some payments for support, is estopped to deny paternity and defect in prior proceedings."[2]

 Larry asserts on appeal that he was never informed of his statutory right to court-appointed counsel under § 14-17-18(1), N.D.C.C.:

---

2. We reject Larry's contention that the district court's findings are inadequate under Rule 52(a), N.D.R.Civ.P. The purpose of Rule 52(a) is to enable the appellate court to understand the factual determination made by the trial court and the basis for its conclusions of law and judgment. *All Seasons Water Users v.* *Northern Imp.,* 399 N.W.2d 278 (N.D.1987). Findings that enable this court to understand the reasoning behind the court's decision are all that is necessary. *Healy v. Healy,* 397 N.W.2d 71 (N.D.1986). The trial court's findings adequately explain the reasons for its decision in this case.

"*14–17–18. Right to counsel—Free transcript on appeal.*

"1. At the pretrial hearing and in further proceedings, any party may be represented by counsel. The court shall appoint counsel for a party who is financially unable to obtain counsel."[3]

According to Larry, he should have been advised of his right to court-appointed counsel at the time he was served with the summons and complaint in the original proceeding. Had he been so advised, Larry contends, he would have been represented by counsel because he was indigent and would have been able to show to the trial court that he could not afford to pay child support in the amount demanded. Larry asserts that the trial court's failure to vacate the judgment and "remedy the injustice which occurred as a result of non-appointment of counsel" constitutes an abuse of discretion.

We agree with Larry that sending a notice of the right of an indigent to court-appointed counsel with the summons and complaint in a paternity action is a sound procedure. *See Ramsey County Pub. Defender's Off. v. Fleming,* 294 N.W.2d 275 (Minn.1980). We need not determine, however, whether such a practice is required by § 14–17–18, or when the right to be informed of the availability of court-appointed counsel attaches under the statute, because we agree with the trial court that Larry has not established sufficient grounds to vacate the judgment.

■ In reviewing the denial of a motion under Rule 60(b) to set aside a regularly entered judgment, we do not determine if the trial court was substantively correct in entering the judgment from which relief is sought. *Dakota Bank & Trust Co. of Bismarck v. Reed,* 402 N.W.2d 887 (N.D. 1987). Rather, our function is to determine if the trial court abused its discretion in ruling that there were not sufficient grounds for disturbing the finality of the judgment. *Greenwood v. American Fam-*

*ily Insurance Co.,* 398 N.W.2d 108 (N.D. 1986). In applying this principle, we have recognized that "[t]he fact that the district court may have made a mistake of law does not justify setting the judgment aside under Rule 60(b)." *Production Credit Ass'n v. Dobrovolny,* 415 N.W.2d 489, 492 (N.D. 1987) [Footnote omitted]. *See also Matter of Estate of Hansen,* 458 N.W.2d 264, 268 (N.D.1990) ["An error of law in the proceedings may furnish grounds for appeal but it does not invalidate the judgment."]. Thus, assuming that Larry's statutory right to court-appointed counsel under § 14–17–18 was violated in this case, that alone is not sufficient to justify relief under Rule 60(b).

■ Larry asserts, however, that because he did not appear at the hearing to give testimony and did not respond to the summary judgment motion we should apply a more lenient standard applicable to default judgments. We said in *CUNA Mortgage v. Aafedt,* 459 N.W.2d 801, 803 (N.D.1990):

"This court has long encouraged trial courts to be more lenient when entertaining Rule 60(b) motions to vacate default judgments as distinguished from 'litigated' judgments, that is, judgments entered after trial on the merits. *E.g., Suburban Sales v. District Court of Ramsey,* 290 N.W.2d 247, 252 (N.D. 1980); *Perdue v. Sherman,* 246 N.W.2d 491, 496 (N.D.1976). While a trial court certainly has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment [*First Federal Savings and Loan Ass'n v. Hulm,* 328 N.W.2d 837 (N.D.1982) ], the range of that discretion is limited by three important considerations. *See Schwab v. Bullock's Inc.,* 508 F.2d 353, 355 (9th Cir.1974). First, Rule 60(b) is remedial in nature and should be liberally construed and applied. *Sioux Falls Construction Co. v. Dakota Flooring,* 109 N.W.2d 244, 247 (N.D.1961). Second, decisions on the merits are preferable to those by default. *Bender v.*

---

**3.** Larry relies exclusively on the statutory right to court-appointed counsel for indigents provided by § 14–17–18, N.D.C.C. He does not claim a constitutional right to court-appointed counsel

in paternity proceedings. *See* cases collected in Annot., *Right of indigent defendant in paternity suit to have assistance of counsel at state expense,* 4 A.L.R.4th 363 (1981).

*Liebelt*, 303 N.W.2d 316, 318 (N.D.1981). Third, as a consequence of the first two considerations, ' "[w]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." ' *King v. Montz*, 219 N.W.2d 836, 839 (N.D.1974) [quoting 7 Moore's Federal Practice ¶ 60.19, at p. 60–156]."

Assuming for this purpose that the September 1982 summary judgment is analogous to a judgment by default, in order for Larry to prevail he must show that he has a meritorious defense to the merits of the action and that he sought relief from the judgment in a timely manner. Larry has failed to make either showing.

In a paternity action, our foremost concern is with the child's welfare. *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D.1982). It is for this reason that we have disapproved of default adjudications of paternity in the past. In *Throndset v. J.R.*, 302 N.W.2d 769 (N.D.1981), we held that, on a Rule 60(b) motion to vacate a default paternity judgment, the trial court should have allowed the putative father to demonstrate, as he proposed to do by way of blood tests, that he was not actually the father of the child:

> "If the judgment required only that Roe make the monetary payments [for child support], we would affirm the trial court's refusal to vacate the judgment. However, we believe that the order denying the motion to vacate the default judgment should be reversed for another reason.... Paternity may be denied by the putative father or a man determined to be the father after judicial proceedings.

That denial may well have a more detrimental effect on a child when the judicial proceedings have culminated in a default judgment which the court has refused to vacate upon the request of a man who wishes to have blood tests taken to determine his parenthood and who seemingly questions whether or not he is the actual father of the child. Our concern is with Ada rather than with Roe.

> ". . . We therefore believe it is preferable that the matter of Roe's paternity of Ada be determined in a judicial proceeding rather than by default judgment so that this cloud at least will be removed from Ada's birth record and from her future." *J.R., supra*, 302 N.W.2d at 773–774.

In this case, unlike the putative father in *J.R.*, whose objective was to demonstrate by blood tests that he was not the child's father, Larry's primary purpose for attacking the September 1982 summary judgment for lack of court-appointed counsel is to challenge the amount of child support payments set by the judgment. Although Larry has expressed some renewed "doubt" that he is Carl's father, he has presented no evidence or argument that seriously questions that determination.[4] The record shows that Larry voluntarily signed an acknowledgment of paternity prior to Carl's birth. *See Stark County Social Service Board v. R.S.*, 472 N.W.2d 222 (N.D.1991). He does not claim that he was coerced into signing the form. The results of the blood tests requested by Larry, showing a 99.749 percent likelihood that he is Carl's father, corroborate his acknowledgment of paternity. In view of Larry's prior acknowledgment of paternity and the results of the blood tests, it would be pure speculation to suggest that there would have been no finding of paternity if Larry had been rep-

---

**4.** Larry asserts that there is "some doubt" about the validity of the blood tests in this case. The letter from the Minneapolis War Memorial Blood Bank containing the test results shows that copies were forwarded to attorney Lester Schirado who had never worked for the Regional Child Support Enforcement Unit. Larry testified that he never attempted to retain Schirado as his attorney. The trial court asked Schirado for an explanation of why he received a copy of the report. Schirado responded that "I had checked my old files and I was not retained by

[Larry] relative to a paternity action. All that was found was a copy of correspondence from the Minneapolis War Memorial Blood Bank dated June 20, 1982, from H.F. Polesky, M.D., Director. Why a copy was given to me is unknown as I did not represent [Larry]." Larry asserts that this raises the possibility of a mix-up in the blood test results. We believe that the mere mailing of a copy of the blood test results to Schirado, without more, is insufficient to raise a legitimate question as to the validity of the test results.

resented by counsel. *Cf. State v. Micko*, 393 N.W.2d 741 (N.D.1986) [claim of ineffective assistance of counsel requires a showing that but for counsel's conduct the result of the proceeding would have been different].

Whether an attorney could have helped reduce the amount of child support ordered at the original proceeding presents a closer question, but we cannot say that ordering an employable father, even if presently unemployed, to pay $150 per month for child support is beyond the bounds of reason. Moreover, any harm suffered by Larry in this regard is just as likely attributable to his failure to appear at the hearing. The trial court's finding that Larry knew about the summary judgment hearing, but chose not to attend, is not clearly erroneous under Rule 52(a), N.D.R.Civ.P. The record contains an affidavit of mailing for the notice of summary judgment and the Board's attorney told the court that he personally informed Larry about the hearing and advised him to attend. Larry received the summons and complaint notifying him that the action concerned issues of paternity and support. Larry has shown no prejudice from the lack of counsel prior to the entry of the summary judgment. Presumably, had he chosen to attend, Larry would have been informed of his right to court-appointed counsel at the summary judgment hearing. It was Larry's failure to attend the hearing that caused his asserted harm in this case.

■ We also agree with the trial court that Larry's request for relief from the judgment is not timely and that, under the circumstances, he is estopped from upsetting the judgment. Larry did not attempt to obtain relief from the judgment until approximately nine years after it was entered. In the meantime he has participated in several court proceedings brought against him to enforce his child support obligation without raising the issue of his lack of notice of the availability of court-appointed counsel in the original proceeding. We have held that principles of estoppel may prevent a party from upsetting a judgment where that party has forgone "countless opportunities to challenge" it. *Rott v. Connecticut General Life Ins. Co.*, 478 N.W.2d 570, 577 (N.D.1991). Although Larry claims he did not become aware of his right to court-appointed counsel until 1990, we believe that Larry reasonably should have known about the asserted defect in the original proceedings long before this Rule 60(b) motion was brought.

■ Furthermore, the evidence that Larry signed a stipulation for a blood test acknowledging his right to obtain legal counsel and opportunity to secure legal counsel, that he subsequently appeared at several proceedings to enforce the support orders, and that the Board's attorney advised him to attend the hearing on the motion for summary judgment raises inferences which support the trial court's finding that Larry knew he could have counsel appointed for him and chose not to have counsel. Although the advisement of the statutory right to counsel and waiver of counsel does not appear directly in the record, we have not heretofore required a procedure implementing the statutory right to counsel in parentage cases similar to that in criminal cases wherein the waiver of right to counsel and a plea of guilty must be reflected on the record. *See* Rule 11, N.D.R.Crim.P.; *State v. Orr*, 375 N.W.2d 171 (N.D.1985) [VandeWalle, J., concurring specially].

■ In effect, Larry is attempting through this untimely Rule 60(b) motion to retroactively modify past-due child support. However, past-due and unpaid child support payments are not subject to retroactive modification. *See* § 14–08.1–05(1)(c), N.D.C.C.; *see also Thorlaksen v. Thorlaksen*, 453 N.W.2d 770 (N.D.1990); *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D. 1989); *Meadows v. Meadows*, 312 N.W.2d 464 (N.D.1981); *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970).

We conclude that the trial court did not abuse its discretion in refusing to vacate the September 1982 summary judgment. Accordingly, the order is affirmed.

ERICKSTAD, C.J., MESCHKE, J., and ALLAN SCHMALENBERGER, District Judge, concur.

LEVINE, J., concurs in the result.

ALLAN SCHMALENBERGER, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON, not being a member of this Court at the time this case was heard, did not participate in this decision.