v.

STATE of Wyoming, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, ex rel., B.L.S., a minor child, Appellee (Plaintiff).

No. C–92–2.

Supreme Court of Wyoming.

March 19, 1993.

A.P., pro se.

Joseph B. Meyer, Atty. Gen. and Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellee.

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

CARDINE, Justice.

This appeal is from a judgment and order declaring AP the natural father of the child (BLS); against AP and in favor of the Department of Family Services (DFS) in the amount of $2,646.03 for Aid to Families with Dependent Children and medical care provided on behalf of his child BLS which AP is to repay at the rate of $25.00 per month; requiring AP to pay child support of $100.00 to $300.00 per month, depending on the level of his income, such child support payments to continue until BLS is emancipated. The question here presented is whether the procedure followed in the district court was adequate to guard the interests of the appellant (AP).

We affirm.

AP did not present a formal statement of the issues in his brief. We perceive, nevertheless, the issue presented to be his claim that he was prejudiced by the failure of the district court to strictly adhere to statutorily required procedures. The appellee, State of Wyoming, contends that AP failed to carry his burden of establishing prejudicial error.

A complaint was filed by DFS on October 22, 1990, seeking to establish AP as the natural father of BLS and to require past and future support for the child. AP answered on January 30, 1991, denying the gravamen of that complaint. By order entered on February 15, 1991, the district court appointed counsel, at the expense of DFS, to represent AP. By order entered on March 18, 1991, the district court appointed a guardian ad litem for BLS, directed genetic testing of AP to determine the probability of his being the father of BLS, and scheduled an informal hearing for April 17, 1991. The record does not reflect

whether that informal hearing ever took place.

On September 20, 1991, the attorney appointed to represent AP asked to withdraw asserting that his representation of AP had been rendered unreasonably difficult by AP and that AP had fired him. The district court did not enter an order permitting counsel to withdraw. The record reflects that AP's counsel wrote to AP on September 17, 1991, and informed AP that the genetic testing established that the probability of his being the father of BLS was 99.96 percent certain. He advised AP that his choices were:

1. Visitation and child support (easy to achieve); or

2. Custody of [BLS] (very difficult to obtain).

AP's response, filed in the record on September 20, 1991, was cast in fairly strong language:

I wager that I absolutely have no possibility of accomplishing success with you for my attorney. To the very best of my knowledge you have seriously weakened my case. I should not have to babysit my attorney, and hold his hand to make sure that things get done. I was counting on you to pursue and to follow threw [sic]. I realize that at times "things get pretty hectic." Things are going to get a hell of a lot more hectic. I could not count on you in the past—what will happen in the future. . . .

I do not know why an attorney would intimidate the State's Officials for something totally out of the state[']s control. It was not right, and I certainly did not appreciate the letter I received from one of them of which was indirectly detrimental to my character.

On more than one occasion you have screwed up my case, a case that was once very strongly fortified. Moreover, your poor advice draws me to believe that you are clearly not looking out for my best interest. In fact you disclosed confidential information to the plaintiff that will most likely lead my case into default.

Furthermore, it is not my intention to be represented as a discourteous anal-tentative rectal-section; I do not want to come across to The Judge that way, at all.

I insist that you file motion for a sufficiently competent replacement attorney—immediately, before you further impede your personal liability. If you do not file the motion: I will; I will word things appropriately; you will have one hell of a lot of explaining to do.

By order entered on October 7, 1991, the district court set the matter for hearing to be held on October 30, 1991. On October 28, 1991, the attorney for DFS stipulated that the guardian ad litem could withdraw as attorney for BLS. On October 30, 1991, the guardian ad litem filed a motion to withdraw. The district court did not grant the motion for AP's attorney to withdraw, nor did it grant the motion for the guardian ad litem to withdraw. On the contrary, the district court went ahead with the hearing scheduled for October 30, 1991. AP did not appear at that hearing, and the district court entered default in favor of DFS. AP asked to be relieved of that default because he had failed to appear due to a "calendaring problem," *i.e.*, he had calendared the hearing for October 31, 1991, rather than for October 30, 1991. In addition, he claimed he did not know that the October 30, 1991 hearing could potentially be dispositive of the litigation in this matter. On April 14, 1992, the district court entered a judgment and order declaring AP to be the natural father of BLS; entered judgment against him and in favor of DFS in the amount of $2,646.03, to be paid in $25.00 per month installments; and requiring payment of child support of not less than $100.00 nor more than $300.00 per month.

Wyoming statutes establish the procedural requirements for a matter such as this. DFS may bring an action as was done here to determine the existence of the father child relationship with respect to a child who has no presumed father. W.S. 14–2–104 (Supp.1992). This action was filed by DFS within the statute of limitations. W.S. 14–2–105 (Supp.1992). Wyo-

ming Statute 14–2–107 (1986) further provides:

The child shall be made a party to the action. If he is a minor he shall be represented by his guardian or a guardian ad litem appointed by the court. The child's mother or father may not represent the child as guardian or otherwise. The natural mother, each man presumed to be the natural father under W.S. 14–2–102 and each man alleged to be the natural father may be made parties and shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard. The court may align the parties.

All of these procedural requirements were followed. All matters determined by the district court were authorized by the statutes. W.S. 14–2–106 (1986) and W.S. 14–2–113 (1986 and Supp.1992). Counsel was appointed for AP as required by W.S. 14–2–116 (Supp.1992).

We are well aware that failure to adhere to the procedural requirements of these statutes may cause a judgment rendered under them to be void. *Matter of TLB*, 771 P.2d 811 (Wyo.1989). This case did slip into disarray when AP wrote the September 20, 1991 letter to his attorney and then failed to appear at the hearing scheduled by the district court. Nonetheless, we are comfortable that AP had notice of the hearing, an opportunity to be heard, and was accorded the process due under all the circumstances of this case. That he was not heard is attributable only to himself. The result achieved was appropriate. The district court did not err, under the circumstances of this case, in entering default against AP, nor did it abuse its discretion in refusing AP relief from that default. *See Throndset v. L.L.S.*, 485 N.W.2d 775 (N.D.1992); *Mendocino County on Behalf of Bartlow v. Ted S.*, 217 Cal.App.3d 1202, 266 Cal.Rptr. 452 (1990); *County of Hennepin v. Brinkman*, 378 N.W.2d 790 (Minn.1985); *Thomas v. Fey*, 376 N.W.2d 266 (Minn.App.1985); *State v. Beauchamp*, 473 So.2d 323 (La.App.1985); 14 C.J.S. *Children Out-of-Wedlock* § 121 (1991).

The judgment of the district court is affirmed.

URBIGKIT, J. (Retired), files a dissenting opinion.

URBIGKIT, Justice, Retired, dissenting.

This is the state family service agency's effort to find a parent and through a determination of parentage action, to help defray the taxpayers' burden in maintenance of the aid to dependent children program. The goal is appropriate and the need is significant.

However, the alleged father suffered a judgmental conclusion without the barest semblance of due process. Both the judiciary and society can do better than this by providing reasonable due process in a litigative campaign of this character. My view is not outlandish, since a representative of the Attorney General's office, in representation of the Department of Family Services (DFS) on appeal, confessed error, which was subsequently withdrawn and other counsel was then involved to provide a formula to justify this abysmal denial of fundamental and well-determined rights by contention of the absence of prejudice. There cannot be prejudice as an issue within the processes existent here when there were no litigative rights provided.

The scenario of events in this litigation is near unbelievable, but certainly confused, regarding what occurred within the steps taken by the trial court for disposition of this determination of parentage action. The majority opines the issue to be for appellant: "That he was [not] prejudiced by the failure of the district court to strictly adhere to statutorily required procedures." Clearly, prejudicial error is the sole interest invoked in examination by the majority, which, as we shall see from what occurred, simply means that this court determines that rights for a hearing and trial can be disregarded if the trial court first, and the appellate court thereafter, determines the case without either evidence or hearing to be one of a clear fact of parentage.

When all else fails, justice and the law are better served if we simply look specifically at the occurrence of events in a chronological outline.

October 22, 1990: A complaint was filed by DFS alleging assignment of rights to support payments from the mother of the minor child, BLS, and requesting a determination of parentage against appellant. BLS was born on December 17, 1988. When the mother, DAS, applied for public assistance benefits, the state was given the assignment of rights. Claimed in the proceedings was a determination of parentage, repayment of AFDC benefits then totaling $4,371, and medical expenses in the amount of $2,372.06, as well as a request for future support in an amount of at least $200 per month.

January 17, 1991: Service of the summons was made.

January 30, 1991: An answer, in essence, of general denial was filed pro se.

January 30, 1991: A motion for appointment of counsel was filed.

February 8, 1991: An order setting the motion for appointment of counsel hearing on for February 15, 1991 was entered.

February 15, 1991: Counsel "A" was appointed to represent appellant (putative father).

March 7, 1991: Counsel "A" moved to withdraw and requested the appointment of other counsel to be putative father's counsel as a substitute. I will designate appellant's counsel as Counsel "B" to avoid embarrassment to the attorney.

March 7, 1991: An order was entered permitting Counsel "A" to withdraw and appointing Counsel "B" as a substitute.

March 11, 1991: Counsel "B" filed a motion for informal hearing, appointment of guardian ad litem, and genetic testing.

March 18, 1991: An order was entered directing genetic testing, appointment of a guardian ad litem, who was local attorney J. John Sampson, and scheduling an informal hearing.

September 20, 1991: Counsel "B" moved to withdraw on the basis of disagreement and dispute with appellant (putative father).

October 7, 1991: An order was entered setting a hearing on the motion for leave to withdraw as attorney for putative father and for an informal hearing to be held on the 30th day of October, 1991. The order included the foregoing in its terms: "If counsel desire that the proceedings be reported, such arrangements should be made with the Court Reporter *at least three (3) days prior to the date of the hearing.*" (Emphasis in original.) Counsel were advised of the order by copies in their box at the courthouse and a copy, according to the record, was sent to appellant.

October 28, 1991: A stipulation and motion was filed by counsel for the State, which stated:

COMES NOW the Plaintiff State of Wyoming and offers to stipulate to the withdrawal of J. John Sampson as Guardian Ad Litem and to the withdrawal of [Counsel "B"] as Attorney for Defendant, and the Plaintiff waives its appearance at the hearing as to the motions for withdrawal of these persons.

The Plaintiff State hereby moves for a continuance of the informal hearing in this matter until such time as the questions of representation of the Defendant [AP] and guardianship ad litem of [BLS] can be settled.

October 30, 1991: The guardian ad litem, J. John Sampson, moved to withdraw on the basis that he would assume the duties as a county court judge on November 1, 1991. The motion was dated October 24, 1991, but filed October 30, 1991.

October 30, 1991: (Taken from the billing statement subsequently authorized for payment by the trial court for Counsel "B," since there is no record of what occurred on the date, except from that statement and from allegations by appellant.) Court appearance, motion and informal hearing. To be repetitive, there is no record of the events, who was present, or what occurred, and no order was entered and no evidence

was introduced into the record.[1] Wyo.Stat. § 14–2–108 (Cum.Supp.1992), entitled "Informal hearing; refusal of witnesses or parties to testify; testimony of physician; * * *," provides:

(a) As soon as practicable after an action is brought to declare the existence or nonexistence of the father and child relationship, an informal hearing shall be held. The court may order that the hearing be held before a referee. The public is barred from the hearing. *A record of the proceeding shall be kept.*

(Emphasis added.)

We know from the billing statement that Counsel "B" appeared at the trial court on October 30 and that appellant did not. No record was kept, no documentation is available as to what occurred, and no order was entered as a result of the session.

However, something else did happen. On November 5, 1991, (according to appellant, by direction of the trial court), a motion for relief from default was filed *by Counsel "B" who had been discharged.* Obviously, this was done at the request of appellant and, reason would say, in accord with the direction of the trial court to appellant. That motion stated the following:

[AP] respectfully moves this Court to relieve him from his default in failure to appear at the hearing scheduled on the 30th of October, 1991 at 1:30 p.m.

In support of this Motion, [AP] shows the Court:

1. [AP] had fired his attorney on the 19th of September, 1991 (see letter attached to Motion for Leave to Withdraw).

2. [AP] was served with the Motion for Leave to Withdraw as attorney for Defendant and the Order Setting the Motion to Withdraw for hearing.

3. [AP] did not understand that the Order Setting the Motion for Leave to

Withdraw might result in a resolution of the support and custody aspects of his case. He thought the only matter at issue was his continued representation by [Counsel "B"].

4. [AP] has been informed of the Court's decision regarding the support, custody, and visitation issues; specifically, that the Court will deny his claim for custody or visitation.

5. [AP]'s failure to appear was due to excusable neglect and inadvertence for the following reasons:

A. Although he intended to attend the hearing, he made a clerical error in calendaring the date and time. He calendared the hearing for the 31st of October instead of the 30th.

B. Because [AP] had fired his attorney, he did not ask his attorney what might happen at the "informal hearing" portion of the October 30, 1991 hearing, nor was he warned by his attorney.

WHEREFORE, [AP] requests that he be relieved of his default, and that the informal hearing be continued to a date he may attend. In the alternative, he asks that, pending retention of new counsel to pursue his custody/visitation claim, he be allowed reasonable visitation of at least every other weekend with his son, [BLS].

Respectfully submitted this 4th day of March, 1991.

            /s/
      _____
      [Counsel "B"]
      Attorney at Law
      [Address stated]

November 15, 1991: An order was filed denying the motion for relief. The following was entered:

---

1. Appellant contends, and it does not appear to be of record in any way, that he had miscalendared the date and expected to appear on October 31, which he did. He states at that time that the trial court advised him to file a motion for *relief from default.* What we do know is that no order was entered by the trial court accepting the withdrawal of Counsel "B" or counsel who acted as guardian ad litem for the minor child. We judicially notice that Judge Sampson assumed the position as county judge on November 1, 1991 and, consequently, could not have legally been involved in any further pursuit in the case. Nothing indicates that he did appear at the motion hearing/informal conference held as a matter of a relatively few minutes on October 30.

The above-entitled matter having come before the Court upon Defendant's Motion For Relief From Default and the Court having considered such Motion finds that the Motion should be denied.
**IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED** that Defendant's Motion For Relief From Default be and the same is hereby denied.

DATED this 15 day of November, 1991.

February 10, 1992: A motion was entered requesting an order approving attorney's fees, which included, in statements: *"That the case is concluded and nothing further remains to be done."* (Emphasis added.) The billing entries which were attached, stated the following dates and events on or after October 30, 1991:

|  |  | [Time] |
|---|---|---|
| 10–30–91 | Court appearance—motions and informal hearing | 0.50 |
| 10–31–91 | Unpleasant conf. with client re: missed court date | 0.40 |
| 10–31–91 | Preparation of Motion for relief from default | 0.60 |
| 10–31–91 | Telephone conf. with Kinnison [State's attorney] | 0.10 |
| 11–04–91 | Revision of Motion, call to Kinnison | 0.25 |
| 11–18–91 | Office conf. with client | 0.25 |
| 02–10–92 | Preparation of Motion and Order for Attorney's Fees | 0.60 |

---

February 10, 1992: An order was entered approving the fees for Counsel "B."

March 25, 1992: A notice of filing the paternity evaluation report was made. This is the only documentary information that was ever made part of the record in this proceeding. The paternity report was obviously not filed of record with the alleged informal hearing on October 30, 1991. The mailing certification for the notice of filing the paternity evaluation shows that it was sent to Counsel "B" for appellant, but no copy was furnished to appellant himself.

April 14, 1992: A judgment was ordered and entered without further proceedings, hearing, or advice to appellant, where discharged appellant's counsel appeared, which stated in initial sentence:

This matter having come on regularly before this court upon the COMPLAINT filed by the State of Wyoming, *and the Order for Setting;* and the Plaintiff appearing, by and through [state's attorney], and [Counsel "B"] appearing; the Court proceeded to hear the matter[.]
(Emphasis added.)

The judgment was approved as to form by the discharged counsel and no record is found which in any way indicates that notice of the prospect of entry of a final judgment was forthcoming had been given to appellant. There is no order setting any hearing after the October order setting the

motion and pretrial hearing held on October 30, 1991.

April 14, 1992: An affidavit of mailing by the district court clerk stated in part:

2. That on the 14 day of April, 1992, I caused to be mailed, by first class United States Mail, postage prepaid, true and correct copies of the Judgment and Notice of Right to Hearing, to the last known address of the Judgment debtor[.]

There is no notice of right to hearing contained in the record. Obviously, the certificate of mailing submitted to appellant the judgment which had been entered without his knowledge and in absence of his opportunity to appear or have a hearing, but in the presence of his discharged counsel.

April 29, 1992: Responsive to this state of the record, appellant filed his motion for relief from judgment, stating in full:

[AP] respectfully moves the Court to relieve him from the Judgement [sic] and Order entered on April 14, 1992.

In support of this motion [AP] shows the Court:

1. [AP] was not served a notice of the Court's order Denying Motion For Relief From Default, enter[ed] on November 15, 1991; therefore, the defendant [AP] was unaware of the Court's decision to enter default despite the fact that it is

not Lawfully possible to default while being represented by an "attorney" whom signed a Judgement [sic] and Order Five and [a] half months later without notifying the defendant that there would be a kangaroo court session on the 14th day of April.

2. [AP] also shows the Court that [Counsel "B"] is negligent: [Counsel "B"] refuses to represent his client, has misled his client and neglected to investigate the effect that the third cousin relationship between [AP] and [DAS] would have on the outcome of the "HLA Blood Test," of which according to The Genetic Counselors, (whom [Counsel "B"] never bothered to contact): *"That is something which should have definitely been brought up."* Another reputable source indicates that *"Third cousin relatives have anywhere from a 12.5 to a 25 percent chance of having the exact same genetic makeup."*

3. [AP] furthers that the Court has pursued no "Uniform Operation of General Law," during the mockery.

4. Furthermore, [AP] awaits the Court's answer to the Motion For Leave To Withdraw As Attorney For The Defendant.

WHEREFORE, [AP] asks that the Court attempt to be fare [sic], and pursue Law and Order; there of relieving him from an unjust Judgement [sic] and providing him with his Constitutional rights.

Respectfully submitted this 29th day of April, 1992.

(Emphasis in original.)

April 29, 1992: A notice of appeal was filed, pro se, by the defendant, which stated in detail:

The Defendant, [AP], hereby serves notice of Appeal onto these matters: Order Directing Genetic Testing done on March 18, 1991; Motion For Second Order Directing Genetic Testing entered the 21st of June, 1991; Motion For Leave To Withdraw As Attorney For Defendant submitted the 20th day of September; Order Denying Motion For Relief From Default done on the 15th of November, 1991; Judgement [sic] And Order entered on the 14th day of April, 1992; Motion For Relief From Judgement [sic] submitted the 28th of April, 1992.

In support of this Appeal, [AP] shows the Court of Appeals:

1. The District Court has violated his Constitutional rights:

A. "The Right of Accused to Defend".

B. The "Right to Counsel."

C. The "Right to Pursue Law and Order."

D. The "Right To Trial."

2. The District Court has pursued an "Unusual" deliberation within the events of circumstances.

A. The Court did not answer Motions.

B. The Court denied reasonable justifiable motions.

C. The Court's proceedings were not appropriately executed.

D. The Court wrongfully discriminates against the defendant.

WHEREFORE, [AP] requests that a Transcript be prepared and submitted with the accompany of a brief onto The Court of Appeals where this matter shall be investigated and rendered unjust.

Respectfully submitted, (without counsel), on this 29th day of April.

May 5, 1992: After the appeal was filed in response to the motion for relief for the non-noticed entry of the judgment, an order of denial was entered which stated:

The above-entitled matter having come before the Court upon the Motion For Relief From Judgment filed herein by the Defendant and the Court having reviewed such motion as well as the file and being fully advised in the premises finds that the Defendant was represented by competent counsel during all proceedings and the Judgment And Order entered in this matter on April 14, 1992, was proper and such motion should be denied.

IT IS, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's Motion For Relief From Judgment be and the same is hereby denied.

This is all the record there is. There is no testimony. There is no documentation of proof except the one paternity report. There is no notice to the appellant of any proceedings which were held after he had requested substitution of counsel and his counsel had moved to withdraw. There was no participation in any fashion by the guardian ad litem following his commencement of duties as county judge on November 1, 1991. There was no actual participation permitted by appellant after his contact with the trial judge on October 31, 1991.

Frankly, I do not find that this record, in any way, accurately supports the statement of the majority of only "the failure of the district court to strictly adhere to statutorily required procedures." It seems clear, beyond question, that there was never any factual hearing of any kind, at any time, in the progress of this proceeding. There is no proof of any kind in this record regarding the proper amounts for which appellant, even if he should have been determined to be the father, should be liable for retroactive re-payments to the state agency. Absolutely no protection was afforded by the statutorily provided and jurisdictionally required guardian ad litem for the minor. With the motion of counsel for appellant to withdraw and the filing of a stipulation in accord therewith by opposing counsel, some action was required of the trial court, even if it should have been a denial of some kind—for good cause shown.[2] The participation by Counsel "B," after moving to withdraw, in approving the final judgment as to form without requesting or demanding some evidentiary hearing

is beyond comprehension. The requirements of statute, not only that a guardian ad litem be appointed, but that the alleged father be given an opportunity to appear; defend with counsel; that a hearing be held; and, a record of the proceedings kept, have each and all been ignored.

We come to the subject which this author discussed in associative context regarding DNA proof of identity. *Rivera v. State,* 840 P.2d 933, 945 (Wyo.1992). The assumption upon which the unproven, non-foundational paternity report came to be filed in this record and upon which this court now makes its decision as stated in the report to be "An untested random man of the North American Caucasian population," showing a combined paternity index of 2,786 to 1. If a trial had revealed, as appellant contends in briefing and argument, but not by trial pursuit since he was denied a trial, that neither he nor the natural mother were North American Caucasians, but rather, in part, Native American and also revealed that the mother and the putative father were related by blood, then we would have a report which has some factual relevance to this case. As it is, in essence, it has absolutely none.[3] There is no foundation provided in determined facts in this record upon which any valid expert analysis can be reliably presented.

If any sense, whatsoever, can be made out of all of this, it is that, by virtue of appellant's misunderstanding the date set for determination of change of counsel and informal conference, he created a status of default which then eliminated all of his rights for a trial or evidentiary hearing pursuant to Wyo.Stat. § 14–2–112 (Cum. Supp.1992), including a right to a jury de-

---

**2.** The only good cause shown that I can find from this record to justify denying the litigant an opportunity for another attorney, where this level of dissatisfaction had developed, is the adamancy of the alleged *putative father* when he denies parentage.

**3.** Perhaps it can be understood why counsel for the State confessed error in statement:

The court below erred in making and entering said order for the reason that subsequent to the withdrawal of the child's initial guardian ad litem, J. John Sampson, in October, 1991, no replacement was ever appointed to represent the child's best interest in the proceedings or in negotiating the agreement

which the court adopted in its paternity decree.

[It is hard for me to understand what agreement is referred, other than the possibility that discharged appellant's counsel, the court and counsel for the State made some agreement in the absence of appellant.]

This court has previously ruled directly on point, holding that orders not complying with the mandates of statutes respecting the determination of paternity W.S. 14–2–101 *et seq.,* in this respect are void. *See Matter of TLB,* 771 P.2d 811 (Wyo.1989) and *Matter of TRG,* 665 P.2d 491 (Wyo.1983).

termination. The record contains no information regarding the income of appellant, although he alleges in documents that he was a student, and contains no information regarding the requirements for support or, for that matter, employment of the mother of the involved child. Certainly, there is nothing contained within this record that reveals that it is in the best interest of this unrepresented minor to be "adopted" by appellant.

Lacking a hearing or evidentiary trial, evidence, legal representation, or a guardian ad litem, I fail to see any way that we can characterize this status of the record as a failure to strictly adhere, or to consider that prejudicial error becomes the test where this court has no facts, evidence, or hearing upon which it can determine anything. This was not justice. If appellant is determinably the father, it should be done in accordance with law. This appeal will badly serve the stature of Wyoming law or this court's obligation to assure equal protection, due process, and access for every litigant who comes to the courthouse door to seek justice. *See* Wyo. Const. art. 1, § 6, due process of law; art. 1, § 8, courts open to all; art. 1, § 9, trial by jury inviolate; and art. 1, § 36, rights not enumerated reserved to people.

Consequently, I dissent.