#24632-a-RWS

**2008 SD 33**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| STATE OF SOUTH DAKOTA EX REL. LORAINA WHITE, | Plaintiff and Appellee, |
| v. | |
| JEFFREY B. BRANDT A/K/A JEFFREY BRIAN BRANDT, | Defendant and Appellant. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

| | |
|---|---|
| LAWRENCE E. LONG Attorney General | |
| DAVID L. BRAUN Special Assistant Attorney General Pierre, South Dakota | Attorneys for plaintiff and appellee. |
| MICHAEL B. CREW of Crew and Crew Sioux Falls, South Dakota | Attorneys for defendant And appellant. |

* * * *

ARGUED FEBRUARY 13, 2007

OPINION FILED **04/16/08**

SABERS, Justice

[¶1.] In 1995, the State of South Dakota *ex rel* Loraina White obtained a default judgment against Jeffrey B. Brandt for child support arrearages. In 2007, Brandt submitted a motion to set aside the default judgment under SDCL 15-6-60(b)(4). The circuit court denied the motion. Brandt appeals. We affirm.

## FACTS

[¶2.] Brandt and White met in Sioux Falls, South Dakota, where they both resided. They began an intimate relationship but never married. They had a child, C.B., in March of 1992. In February 1993, White applied for benefits from the South Dakota Department of Social Services (DSS) and assigned her right to child support payments to the State.

[¶3.] On August 30, 1993, Brandt was personally served with a summons and complaint alleging that he was the father of the child and owed $284 in child support per month. The complaint also requested child support arrearages from the time of the child's birth.

[¶4.] Brandt contacted the Office of Child Support Enforcement (OCSE) and met with the OCSE officer assigned to his case. He said he had been making support payments to White and requested a DNA test. He also spoke with the legal assistant to an attorney with OCSE and again requested DNA testing. Before DNA testing could be conducted, White left the state. Brandt received a letter from OCSE dated September 3, 1993, informing him that his case was being closed since

#24632

White had left the state.[1] It also informed him that if White returned to South Dakota and received assistance, the State would again seek reimbursement.

[¶5.] In July of 1994, Brandt moved to Tempe, Arizona. On December 21, 1994, Brandt was personally served at his residence in Arizona with a second summons and complaint. This complaint alleged that Brandt owed $368 per month in child support, plus arrearages.

[¶6.] Brandt did not respond to this complaint and a default judgment was entered on February 21, 1995. The default judgment declared Brandt the biological father of C.B., set his child support at $368 a month, and set the arrearages at $12,572.[2] Instead of mailing the notice of entry of the default judgment to Brandt's Tempe, Arizona residence, it was mailed to 301 South Willow Street in Sioux Falls, South Dakota, his parent's residence. Brandt learned of this judgment, however, because he referenced the order of default judgment in his March 13, 1995, letter to the OCSE, in which he again requested DNA testing. OCSE informed Brandt that it required a court order for DNA testing because a judgment had been issued. Furthermore, Brandt was advised to contact an attorney and that collection of his support obligation would continue.

[¶7.] At some point Brandt moved to Merida, Mexico. One day, Brandt received a phone call from a Federal Bureau of Investigation (FBI) agent who informed him there was a federal felony warrant for his arrest for failure to pay

---

1. In Brandt's deposition, he testified that, when she left the state, White told him that he was not C.B.'s father.

2. This amount represented past child support arrearages ($12,512) plus the State's recoverable costs and disbursements ($60).

child support. Brandt moved to Sioux Falls, South Dakota in August or September of 2003. Upon his return, he voluntarily turned himself in to the FBI.

[¶8.] On September 12, 2003, Brandt pleaded guilty to violating 18 USC § 228 for failure to pay lawful child support. He was sentenced in November of 2003 to five years of supervised probation. He was also ordered to pay restitution of $49,123.25 for back child support, in payments of not less than $106 a month.

[¶9.] On September 23, 2003, Brandt petitioned for modification of his child support. In his petition, he noted that he was the parent of C.B. After a hearing in front of a child support referee, his support obligation was reduced to $320 a month.

[¶10.] Brandt filed a motion for relief from the default judgment on March 26, 2007. At the hearing, he argued that the default judgment was void under SDCL 15-6-60(b)(4). He alleged the judgment was void because the State did not give him notice of its application for a default judgment. He argued that he was entitled to notice because he made an appearance in the proceeding by requesting a DNA test from the OCSE officer and the legal assistant to the attorney for OCSE. The circuit court denied his motion. Brandt appeals.

**STANDARD OF REVIEW**

[¶11.] "The decision to grant or deny relief from a default judgment rests with the sound discretion of the trial court and we will not disturb the trial court's decision absent an abuse of that discretion." Roso v. Henning, 1997 SD 82, ¶5, 566 NW2d 136, 139 (quoting First Fed. Sav. & Loan Ass'n v. Strub, 427 NW2d 836, 838 (SD 1988). "An abuse of discretion occurs when 'discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *In re* L.M.G.,

2007 SD 83, ¶6, 738 NW2d 71, 73-74 (quoting Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76). The test for an abuse of discretion is not whether we would reach the same result, but rather, "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." State v. Crawford, 2007 SD 20, ¶13, 729 NW2d 346, 349 (quoting Huber v. Dep't of Pub. Safety, 2006 SD 96, ¶22, 724 NW2d 175, 180).

[¶12.]     **Whether the default judgment is void because the State did not give Brandt notice of its application for a default judgment as provided in SDCL 15-6-55(b)(1).**

[¶13.]     Brandt claims he made an "appearance" in this action by requesting DNA testing after service of the first summons and complaint. According to him, that means the State was obligated to give him notice of its application for a default judgment as required by SDCL 15-6-55(b)(1). Since the State did not provide the requisite notice, Brandt argues the default judgment is void.

[¶14.]     SDCL 15-6-55(b)(1) provides in relevant part that "[i]f the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." The specific issue in this case is whether Brandt "appeared" in the action.

[¶15.]     Traditionally, in order to "appear" before a court, a party was required to file documents or actually appear before the court. "Courts now take an expansive view toward the definition of 'appearance[.]'" *Roso*, 1997 SD 82, ¶7, 566 NW2d at 139 (additional citations omitted). Instead of actually appearing or filing

documents, one must demonstrate to the opposing party a clear intent to defend against the lawsuit. *See id.* "Not every exchange between parties constitutes an appearance." Nat'l Sur. Corp. v. Shoemaker, 86 SD 302, 311, 195 NW2d 134, 139 (1972).

[¶16.]     In 1993, after receiving the first summons and complaint, Brandt requested DNA testing from the OCSE. He did not go beyond the request and never completed the testing while the action was pending, nor did he re-request the DNA test. However, the term "appearance" is construed liberally. *See Roso*, 1997 SD 82, ¶7, 566 NW2d at 139 (additional citations omitted). In South Dakota, this request put the State on notice that Brandt intended to defend against the lawsuit. Therefore, this DNA request constituted an appearance in the action.

[¶17.]     On the other hand, when Brandt received the second summons and complaint in December of 1994, he did not request testing or even contact OCSE in any manner. Brandt argues that the proper service of a second summons and complaint did not start a new action. However, SDCL 15-2-30 provides that "[a]n action is commenced . . . when the summons is served on him[.]" The second summons was served on Brandt in December of 1994. The summons explained that Brandt had thirty days to answer the complaint and that failure to do so could result in a default judgment as requested in the complaint. No requests or "appearances" were made by Brandt after receipt of the second summons and complaint in December of 1994.

[¶18.]     Furthermore, the second complaint asked for different relief than the first complaint. The first complaint asked for $284 per month in child support,

while the second complaint asked for $368 per month in child support. The default judgment represented arrearages calculated using the $368 per month figure, not the $284 per month, and set the monthly child support obligation at $368. The proper service of the second summons and complaint constituted a second action. In view of the fact that Brandt did not make an appearance in the second action, no notice was necessary before the State applied for a default judgment.[3]

[¶19.]    Given that the motion for relief is not based on a void judgment, the only other avenue for relief from the judgment would be under SDCL 15-6-60(b)(6), "[a]ny other reason justifying relief from the operation of the judgment." However, this motion must be made within a *reasonable* time. *Id.*; Anderson v. Somers, 455 NW2d 219, 221 (SD 1990). Waiting twelve years after a default judgment does not

---

3.    Even if we considered the separate summons and complaints as one continuous action, we need not set aside the judgment for lack of notice. While an appearance requires notice of intent to take a default judgment to be given to the defendant, it does not make the judgment void under South Dakota law. Our case law suggests that the judgment is *voidable. See* Brockel v. Brockel, 80 SD 547, 549, 128 NW2d 558, 559 (1964) (noting that the failure to give the required notice was "an irregularity and default judgment entered without such notice was voidable."); Peterson v. McMillan, 70 SD 56, 58, 14 NW2d 97, 98 (1944) (noting that "[t]he judgment having been issued without such notice was irregular and voidable."); *see also* Effect of failure to give due notice, 46 AmJur2d Judgments §288 n6 (updated Nov 2007) (citing Brockel v. Brockel, 80 SD 547, 128 NW2d 558 (1964)); R.D. Hursh, Effect, under Rule 55(b)(2) of the Federal Rules of Civil Procedure and similar state statutes and rules, of failure, prior to taking default judgment against party who has appeared, to serve 3-day written notice of application for judgment, 51 ALR2d 837, §3[a], §3[b] (1957). Additionally, contrary to a void judgment, which can be attacked collaterally, *Missouri ex rel Stormfeltz v. Title Guar. & Sur. Co.*, 72 F2d 595, 598 (8thCir 1937), a voidable judgment cannot be attacked collaterally, but must be challenged upon appeal. *Id.*; *see also* Voidable Judgments, 47 AmJur2d Judgments §751 (updated Nov 2007). In this case, the judgment is voidable, not void, and Brandt must demonstrate some reason other than SDCL 15-6-60(b)(4) to receive relief from the judgment in this collateral proceeding.

constitute "within a reasonable time," and Brandt cannot obtain relief under this portion of the statute.

[¶20.] Finally, Brandt cannot demonstrate the circuit court abused its discretion in refusing to grant relief because the doctrines of laches and judicial estoppel prevent him from obtaining relief. For laches to apply, the State has the burden of proving: "1) [Brandt] had full knowledge of the facts upon which the action was based, 2) regardless of [his] knowledge, [he] engaged in unreasonable delay in commencing suit, and 3) allowing [him] to maintain the action would prejudice other parties." Tovsland v. Reub, 2004 SD 93, ¶28, 686 NW2d 392, 402 (additional citations omitted). Judicial estoppel applies when a party "who by their words or conduct take positions inconsistent with their rights, unfairly misleading others into detrimental reliance." A-G-E Corp. v. State, 2006 SD 66, ¶32, 719 NW2d 780, 789 (additional citations omitted). Generally, "the later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped." Canyon Lake Park, L.L.C. v. Loftus Dental, P.C., 2005 SD 82, ¶34, 700 NW2d 729, 737 (quoting Watertown Concrete Products, Inc. v. Foster, 2001 SD 79, ¶12, 630 NW2d 108, 112-13 (citing New Hampshire v. Maine, 532 US 742, 750, 121 SCt 1808, 1814-15, 149 LEd2d 968, 977 (2001))) (additional citations omitted).

[¶21.] Here, Brandt knew there was a possibility he was not the father as early as 1993 and did not contest the paternity. Then, in 2007, Brandt filed a

motion for relief, twelve years after the default judgment, alleging that private DNA testing excluded him as the father.[4] Instead of timely contesting the default, Brandt reaffirmed his paternity in two separate legal proceedings – once when he pleaded guilty in federal court to failure to pay child support and again when he requested modification of his obligation. The position that Brandt was C.B.'s father was judicially accepted in both proceedings. Also, the State would suffer an unfair detriment if Brandt was not estopped. As it argued at oral argument, it may be nearly impossible to find the alleged actual father fifteen years after C.B.'s birth. In addition, the State is precluded from seeking all of the back support even if the alleged actual father is located. Prior to 2005, SDCL 25-8-5 provided that

> The mother may recover from the father a reasonable share of the necessary support of a child born out of wedlock. In the absence of a previous demand in writing served personally or by registered or certified letter addressed to the father at his last known residence, not more than six years' support furnished before bringing an action may be recovered from the father.

Therefore, if the alleged actual father is located, back child support could only be awarded for the previous six years. Brandt cannot obtain relief from the default judgment due to laches and judicial estoppel.

[¶22.] A similar result was reached in the North Dakota case, *Throndset v. L.L.S.*, 485 NW2d 775 (ND 1992). In that case, the North Dakota Supreme Court held that the father could not get relief from a paternity judgment where he did not

---

4. As the circuit court noted, the test and its results were unsubstantiated in that there was no evidence the materials tested came from the alleged individuals. Moreover, there is nothing in the record regarding the test results other than a mention of it in Brandt's affidavit accompanying his motion for relief from the default judgment.

appear at the hearing nor respond to the summary judgment motion. *Id.* at 780. Nine years later, the father attempted to obtain relief from the judgment. In the interim, the father participated in several court proceedings to enforce his child support, but did not raise the issue. Finding his request untimely, the court held he was estopped from denying paternity and from claiming a defect in the original proceeding. *Id.*

[¶23.] In summary, Brandt's request for DNA testing constituted an appearance requiring notice of the application for default under SDCL 15-6-55(b)(1). However, the proper service of a second summons and complaint started a second action and Brandt failed to make an appearance in that action. Therefore, he cannot obtain relief for lack of notice. Additionally, Brandt did not submit this motion for relief within a reasonable time as required for relief from a default judgment under SDCL 15-6-60(b)(6). Finally, Brandt was barred from relitigating paternity by the doctrines of laches and judicial estoppel. Brandt has not demonstrated that the circuit court abused its discretion when it denied his motion for relief from the default judgment.

[¶24.] Affirmed.

[¶25.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.