1997 SD 82

**Eric A. ROSO, Plaintiff and Appellee,**

v.

**Daniel HENNING and Veblen Cheese Factory, Inc., Defendants and Appellants.**

**No. 19934.**

Supreme Court of South Dakota.

Considered on Briefs June 4, 1997.

Decided July 9, 1997.

Nancy J. Turbak of Turbak Law Office, Watertown, for plaintiff and appellee.

Steven M. Johnson, Mark F. Marshall of Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] Following service of a summons and complaint with no response, plaintiff obtained a default judgment without notice to defendants. Yet before suit, plaintiff and defendants' insurer engaged in settlement negotiations. Was this a sufficient "appearance" to require notice before taking a default judgment? We conclude these negotiations constituted an appearance, and defendants' failure to respond resulted from excusable neglect. We therefore reverse the circuit court's refusal to set aside the default judgment.

**Facts**

[¶ 2.] On November 12, 1993, Eric Roso and his passenger were injured while driving near Kranzburg when they were struck from behind by a Veblen Cheese Factory truck driven by Daniel Henning. Both Roso and the passenger hired the same attorney to prosecute their claims for damages. The passenger's case proceeded to court first, where he eventually won a jury award of $80,000. The attorney then conferred with defendants' insurer, CNA, to settle Roso's claim. These negotiations proved unsuccess-

ful, and on June 27, 1996, counsel sent a letter to CNA stating that if the $115,000 settlement demand was not met, suit would commence in ten days. On July 5, 1996, CNA telephoned Roso's counsel to inform her no further offer was forthcoming. Veblen Cheese and Henning were served on July 12 with a summons and complaint in Lea County, New Mexico, the place where the company had relocated. No copy was sent to CNA's claims representative, who had handled the matter since 1993, or to defendants' lawyer in the passenger's case. Doug Tobkin, a Veblen Cheese corporate officer, claims he then sent the summons and complaint to insurance agent, Culbert–Davis, in Sioux Falls, following the same procedure he took when served in the earlier proceedings. Culbert–Davis did not receive them. In the end, the judge concluded Tobkin never sent the documents.

[¶ 3.] Without giving notice to defendants, Roso applied for a default judgment. At the *ex parte* hearing on August 28, 1996, the circuit court acknowledged on the record a familiarity with the facts from presiding in the passenger's case. After taking evidence on damages, the court entered a judgment for $350,000, the exact amount requested by counsel. On September 5, 1996, defendants received Notice of Entry of the Default Judgment. Tobkin called the claims manager at Culbert–Davis and faxed the summons, complaint, and judgment. This was the first phone call the manager recalled receiving from Tobkin on the matter. Tobkin then retained attorney Roger Ellyson to request that the judgment be set aside; he also spoke to attorney Reed Rasmussen, who had represented defendants in the passenger's suit. Tobkin told Rasmussen he was not sure if he had mailed the summons and complaint when the company was served.

[¶ 4.] On September 6, 1996, Ellyson filed a Motion to Set Aside Judgment by Default, and Rasmussen later filed a Notice of Appearance as co-counsel. A hearing was held on the motion in October, but the court denied relief and later rejected a motion for reconsideration, striking from the record Tobkin's affidavit explaining why he initially was unsure if he mailed the pleadings. The

court concluded Tobkin's testimony was not credible. It ruled: (1) Tobkin had inexcusably failed to send the pleadings to the insurance agent and failed to follow up with a phone call to confirm his company's interests were being protected; and (2) there was no meritorious defense. This appeal followed.

### Standard of Review

■ [¶ 5.] "For good cause," SDCL 15–6–55(c) allows a court to "set aside a judgment by default in accordance with § 15–6–60(b)." "The decision to grant or deny relief from a default judgment rests with the sound discretion of the trial court and we will not disturb the trial court's decision absent an abuse of that discretion." *First Federal Sav. & Loan Ass'n v. Strub*, 427 N.W.2d 836, 838 (S.D.1988); *see In re Estate of Nelson*, 1996 SD 27, ¶ 15, 544 N.W.2d 882, 886 ("The trial court may grant relief from final judgment based on mistake, surprise, newly discovered evidence and for any other reason which justifies relief. The trial court's discretion is to be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice.") (citations omitted). Ultimately, "any doubt [should be] resolved in favor of an application to set aside a judgment in order that the case may be tried upon the merits." *National Surety Corp. v. Shoemaker*, 86 S.D. 302, 309, 195 N.W.2d 134, 138 (1972).

### Analysis and Decision

■ [¶ 6.] A default judgment may be taken against a party who has "failed to plead *or otherwise defend*" a suit. SDCL 15–6–55(a). The mechanism for obtaining a default judgment is set forth in SDCL 15–6–55(b)(1):

By the Court. In all cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a minor or incompetent person unless represented in the action by a guardian, conservator or guardian ad litem who has appeared therein. *If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the* hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of this state. (Emphasis added).

If an appearing party has not been given notice of hearing on an application for default judgment, prejudice is conclusively presumed. *Heitman v. Gross,* 70 S.D. 510, 512, 19 N.W.2d 508, 509 (1945)(construing predecessor statute).

[¶ 7.] Courts take an expansive view toward the definition of "appearance," often finding it when a party shows an intent to defend. *Muniz v. Vidal,* 739 F.2d 699, 700 (1st Cir.1984)("strong authority" requires court to look beyond formal actions to evaluate appearance); *Lutomski v. Panther Valley Coin Exchange,* 653 F.2d 270, 271 (6th Cir.1981); *Charlton L. Davis & Co. P.C. v. Fedder Data Center,* 556 F.2d 308, 309 (5th Cir.1977); *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C. Cir.1970); *Christy v. Carlisle,* 94 Nev. 651, 584 P.2d 687, 689 (1978); *Shoemaker,* 86 S.D. at 311, 195 N.W.2d at 139 (quoting with approval *H.F. Livermore Corp., supra,* liberalizing definition of "appearance"); 10 J. Moore, *Moore's Federal Practice* ¶ 55.21[2][b] (3d ed 1997); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2686 (2d Ed. 1983 & 1997 Supp.). A comment by the Sixth Circuit Court of Appeals is representative: "Though it is true that defendants made no formal appearance and filed no papers, courts now look beyond the presence or absence of such formal actions to examine other evidence of active representation." *Lutomski,* 653 F.2d at 271; *see generally Peterson v. McMillan,* 70 S.D. 56, 58, 14 N.W.2d 97, 98 (1944)(written stipulation between parties extending time for answer constituted appearance necessitating notice for taking of default judgment).

[¶ 8.] A default judgment is an extreme remedy, *Tank v. Munstedt*, 504 N.W.2d 866, 868–69 (S.D.1993), and should only be granted when "the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp.*, 432 F.2d at 691; *Sun Bank of Ocala v. Pelican Homestead & Sav.*, 874 F.2d 274, 276 (5th Cir.1989)(also noting an appearance is "not ... confined to physical appearances in court or the actual filing of a document in the record"); *Shoemaker*, 86 S.D. at 311, 195 N.W.2d at 139 (but not "every exchange between the parties constitutes an appearance"—default judgment appropriate when process stopped by unresponsive party). The Rules of Civil Procedure "are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank*, 874 F.2d at 276 (footnotes omitted). Indeed, "[a]n appearance within the contemplation of [the rule] does not necessarily require some presentation or submission to the court. (Citation omitted). That rule is designed to insure fairness to a party or his representative who has indicated a clear purpose to defend the suit." *Christy*, 584 P.2d at 689.[1]

[¶ 9.] Failure to submit a responsive pleading or a formal appearance in court will not always eliminate the notice requirement before seeking a default judgment. In considering the sufficiency of an appearance, the Fifth Circuit Court of Appeals offered sound advice:

> We are aware of the burden that delay imposes on litigants, and of a busy trial court's need to maintain an efficient procedural regimen that provides for trial on the merits in those cases that warrant trial. Courts, however, can deal with obstinate and dilatory parties in a variety of ways, and judgment by default should not be the first resort. In a suit that had been in progress for months and in which counsel for [Defendant] was fully aware that [Third–Party Defendant] had evinced a desire to defend itself, counsel might well have observed the courtesy of a bygone day that is still, fortunately, practiced by some members of our profession, of simply advising [Third–Party Defendant] that, if it continued to fail to plead formally, [Defendant] would be obliged to request a judgment by default.

*Sun Bank*, 874 F.2d at 277. *See also Boles v. Weidner*, 449 N.E.2d 288, 290 (Ind.1983)(although not having a duty to do so, failure of plaintiff's counsel to exercise courtesy of notifying carrier of commencement of suit a prejudicial factor contributing to entry of default judgment).

[¶ 10.] Earnest negotiations took place here before the complaint was served. CNA's last offer to Roso before suit was $45,000. Unquestionably, CNA was defending this claim for Veblen Cheese and Henning. The same parties, lawyers, and adjuster were involved in this matter, as were involved in the passenger's case, which arose from the same accident. We believe "informal contacts" between attorneys and others should be treated with "a degree of common-sense flexibility," which we now apply in holding these settlement conferences were sufficient to create an appearance. *Muniz*, 739 F.2d at 701 (noting settlement negotiations sufficient for appearance under the rule); *CSB Corp. v. Cadillac Creative Advertising, Inc.*, 136 F.R.D. 34, 35 (D.R.I.1990)(settlement discussions constitute appearance); *H.F. Livermore Corp.*, *supra* (holding negotiations between parties sufficient to constitute an appearance); *Gazin v. Hoy*, 102 Nev. 621, 730 P.2d 436, 438 (1986)(negotiations enough to constitute appearance); 46 AmJur2d *Judgments* § 300 (1994)(negotiations can establish appearance). *Compare Direct Mail Spec. v. Eclat Computerized Tech.*, 840 F.2d 685, 689 (9th

---

1. See Annotation, *What Amounts to an "Appearance" Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, Providing that if the Party Against Whom a Judgment by Default Is Sought Has "Appeared" in the Action, He Shall Be Served With Written Notice of Application for Judgment*, 27 ALRFed 620 (1976 & 1996 Supp.); Annotation, *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention to Take Default Judgment*, 73 ALR3d 1250 (1976 & 1996 Supp.).

Cir.1988)(while court will usually try to find an appearance, facts here not enough as parties negotiated only one day before the summons and complaint were served).[2]

 [¶ 11.] Defendants made an appearance entitling them to notice of the default judgment hearing under SDCL 15–6–55(b). "Failure to give the notice when it is required is grounds for setting the judgment aside." *Shoemaker*, 86 S.D. at 310, 195 N.W.2d at 139. Nonetheless, as they filed no responsive pleading following service of the summons and complaint, we must determine whether defendants, to obtain relief from the judgment, (1) acted with excusable neglect, and (2) had a meritorious defense. *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D. 1994); *Clarke v. Clarke*, 423 N.W.2d 818, 820–21 (S.D.1988). In the first prong of this test, excusable neglect

> must be neglect of a nature that would cause a reasonable, prudent person to act similarly under similar circumstances. The term "excusable neglect" has no fixed meaning and is to be interpreted liberally to insure that cases are heard and tried on the merits. Excusable neglect is illusive and difficult to define: "I could never succeed [in defining it intelligibly]. But I know it when I see it." *Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964) (Stewart, J., concurring, describing obscenity).

*Clarke*, 423 N.W.2d at 821 (citations omitted). Surely, it was neglectful for Tobkin to not forward the suit papers to the agent, as the circuit court found. Not following up with a call to make sure the papers were received and acted upon was almost equally neglectful. But the question remains, was this excusable? We conclude it was. After all, the insurer had been solidly involved in representing Veblen and Henning's interests since 1993, defending the case in court and engaging in settlement negotiations on their behalf.

Tobkin knew the passenger's case took twenty-five months to conclude, so it would not be unexpected to hear nothing immediately from the insurer. With the company's insurer already actively involved in the defense of this accident case over a period of years, Tobkin could understandably believe the insurer would be proceeding in this action as it had in the previous one and that the appropriate steps would be taken to protect defendants' interests. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982)(considering culpability of defendant in entry of default judgment); *Hannah v. Blackwell*, 567 So.2d 1276, 1278 (Ala.1990)(culpable conduct by defendant relevant in setting aside default judgment). *See generally Ellington v. Milne*, 14 F.R.D. 241, 242 (E.D.N.C.1953)(information lost at insurer's location constituted excusable neglect). Moreover, defendants sought relief within thirty days after the date their answer was due, and one day after they received notice of entry of default judgment. This was no dilatory behavior, and hardly enough time to prejudice Roso. *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir.1984)(discussing prejudice to prevailing party as one of three factors in setting aside default judgment); *Winn Dixie Stores, Inc. v. Danielsen*, 544 So.2d 320, 320 (Fla.Dist.Ct.App.1989)(considering due diligence as factor when relief is sought from default judgment); *Flower v. Maryliz Food & Drink Corp.*, 129 A.D.2d 676, 514 N.Y.S.2d 438, 439 (1987)(prejudice as factor in setting aside default judgment).

[¶ 12.] As cases should ordinarily be decided on their merits, elementary fairness demands of courts a tolerant exercise of discretion in evaluating excusable neglect. *City of Lemmon v. U.S. Fidelity & Guaranty*, 293 N.W.2d 433, 437 (S.D.1980). We conclude the circuit court failed to exercise appropriate discretion to resolve doubt in favor of defendants' request. *See Sun Bank, supra;*

---

2. Compare the appearance necessary for obtaining personal jurisdiction over a defendant:

> While a party that has appeared for the purposes of personal jurisdiction is certainly entitled to notice under Rule 55(b)(2), the converse might not be true. An appearance for the purposes of Rule 55(b)(2) may consist only of letters or conversations, while a general ap-

> pearance sufficient to waive an objection to personal jurisdiction requires a greater showing of the defendant's acceptance of the court's jurisdiction.

10 J. Moore, *Moore's Federal Practice* ¶ 55.21[2][b] (3d ed 1997). *See also Milton v. Gesler*, 107 Nev. 767, 819 P.2d 245 (1991).

*Phipps v. First Federal Sav. & Loan,* 438 N.W.2d 814, 819 (S.D.1989)("excusable neglect" should be liberally construed); *Midcontinent Broadcasting Co. v. Ava Corp.,* 329 N.W.2d 378, 380 (S.D.1983)(liberal construction of "excusable neglect" proper).

[¶ 13.] Furthermore, the defendants had a meritorious defense, the second requirement for relief:

> "The party seeking relief must present facts either by answer or affidavit from which it could be inferred that upon a trial he would be entitled to a judgment more favorable to himself than the judgment from which he is seeking relief." *Clarke,* 423 N.W.2d at 821. An applicant for relief from a judgment satisfies the meritorious defense requirement, however, if he makes only a prima facie showing. *National Surety Corp. v. Shoemaker,* 86 S.D. 302, 310, 195 N.W.2d 134, 138–39 (1972). "The rule does not intend that there should be two trials on the merits." *Id.*

*Frieberg v. Frieberg,* 509 N.W.2d 415, 419 (S.D.1993). *See* William H. Danne, Jr., Annotation, *What Constitutes "Good Cause" Allowing Federal Court to Relieve Party of His Default Under Rule 55(c) of Federal Rules of Civil Procedure,* 29 ALRFed 7 § 6[a] (1976 & 1996 Supp). Attorney Rasmussen submitted an affidavit stating damages questions persisted about, among other things, Roso's physical injuries and future impairment. He averred further that, given his knowledge of the case, a meritorious defense existed, at least on damages, as there was a likelihood a jury might grant a lower award.[3] We think the record, limited as it is here, supports these assertions. Some questions remain over what injuries Roso may have sustained in an auto accident before the one here and in another accident that occurred two years afterwards. Roso's impairments, though apparently serious, result mostly from soft tissue injuries, and the court's damage award comes primarily from Roso's own capacious estimate: $70,000 for future medical expenses; $150,000 for future lost income. We conclude defendants have a probable meritorious defense sufficient to obtain relief from default.

[¶ 14.] Reversed and remanded.

[¶ 15.] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

---

3. Evidentiary use of settlement negotiations is ordinarily prohibited under SDCL 19–12–10 (FedREvid 408)(limited admissibility of compromise offers and settlement negotiations). Such negotiations are not admissible "to prove liability for or invalidity of the claim or its amount." The policy behind the rule "is to promote the settling of disputes, which would be discouraged if offers of compromise were admitted." 2 J. Strong, *McCormick on Evidence* § 194 (4th ed 1992). Using the settlement discussions in this instance as proof of defendants' "appearance" does not contravene the rule or its rationale, as this evidence is being considered for a different purpose than proof of liability or the validity of the total amount Roso seeks. *See Coakley & Williams v. Structural Concrete Equip.,* 973 F.2d 349, 353 (4thCir.1992)(settlement discussions only inadmissible to prove liability or damages). *See generally Breuer Elec. Mfg. v. Toronado Systems of America,* 687 F.2d 182, 185 (7th Cir.1982)(approving general use of settlement discussions in action to set aside default judgment as it showed knowledge of issues). On the other hand, the rule clearly prevents use of Roso's pre-suit willingness to settle for one-third of his eventual default judgment amount for the purpose of showing a meritorious defense.