2001 SD 103

**Chad MEIER, Plaintiff and Appellee,**

v.

**Anthony McCORD, Defendant.**

and

**Western National Mutual Insurance Company, Intervenor and Appellant.**

No. 21576.

Supreme Court of South Dakota.

Argued on March 21, 2001.

Decided Aug. 8, 2001.

Scott G. Hoy, Scott G. Hoy Law Office, Sioux Falls, SD, Attorneys for plaintiff and appellee Chad Meier.

Douglas M. Diebert of Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Attorneys for intervenor and appellant Western National Mutual Insurance.

MILLER, Chief Justice.

[¶ 1.] In this appeal we hold that the release of a tortfeasor does not preclude an injured party from pursuing underinsured benefits from its insurance carrier. We also hold that the trial court abused its discretion in refusing to set aside a default judgment.

### FACTS

[¶ 2.] On November 21, 1998, Anthony McCord failed to stop at a flashing red light and collided with another vehicle. Chad Meier, his passenger, was injured. It is undisputed that McCord's negligence was the sole cause of the accident. Therefore, liability was not disputed. The parties do dispute the amount of monetary damages Meier should receive.

[¶ 3.] During the summer of 1999, Meier served a summons and complaint on McCord seeking personal injury damages. However, he did not file his lawsuit with the clerk of courts at that time. McCord, through his attorney, engaged in settlement negotiations with Scott Hoy, Meier's attorney. As a result of these negotiations, McCord settled with Meier for $25,000, which equaled the policy limits of his liability policy. During this time, Hoy also notified Meier's insurance carrier, Western National Mutual Insurance Company, of Meier's lawsuit against McCord and of the $25,000 offer. Western National consented to the settlement and the release of McCord.

[¶ 4.] Hoy informed Western National that Meier would seek benefits under his underinsured motorist coverage because the $25,000 settlement with McCord did not fully compensate Meier for his damages. On August 31, 1999, Mel Schwartz, who was Western National's adjuster for this file, sent Hoy a letter stating that the company believed the settlement with McCord adequately compensated Meier for his injuries and that it would not offer additional monies from Meier's underinsured motorist benefits.

[¶ 5.] On September 7, 1999, Meier released McCord from all liability arising out of the accident. By mistake, Hoy sent the original release to Schwartz who received it on September 10, 1999 and returned it to Hoy on September 13, 1999. Hoy claims the release allowed Meier to settle with McCord while permitting Meier to pursue the underinsured motorist claim against Western National.

[¶ 6.] In addition to correspondence, Hoy's office spoke with Schwartz several times between August 31, 1999 and September 15, 1999 discussing Meier's claim for underinsured motorist benefits under his Western National policy. The parties dispute the exact content of these conversations. Hoy contends Schwartz ultimately decided, on behalf of Western National, that the company would make no offer to Meier for underinsured motorist coverage and that it would not defend the suit. Western National argues that the only communication Schwartz made to Hoy's office was that Western National denied Meier's claim for underinsured motorist benefits.

[¶ 7.] Two days after the last conversation, Meier filed the original summons and complaint against McCord with the clerk of courts. On December 3, 1999, Hoy filed Meier's motion for default judgment against McCord and mailed it to Western National. The very same day, the trial judge, without a hearing, granted default judgment in favor of Meier for $125,000. Although aware that the pleadings had been served on McCord, Western National did not receive notice of the filing of the lawsuit or the motion for default judgment until after the circuit court signed the default judgment. Western National contends it was entitled to notice of Meier's intent to take default judgment against McCord and that Meier's post default judgment notice did not provide adequate notice.

[¶ 8.] Upon being served with the judgment, Western National moved the trial court to set it aside. The trial court initially conducted a hearing, where he received affidavits and heard counsels' respective arguments, which led him to direct a subsequent hearing for the purpose of resolving material conflicts between the affidavits provided by each party. After the second hearing, he concluded Schwartz purposefully misrepresented the facts in his initial affidavit and decided to disregard his testimony. The trial court denied Company's motion to set aside the default judgment. Company appeals claiming: (1) the trial court

erred when it entered default judgment against McCord, a party previously released from liability; (2) it was entitled to notice of Meier's intent to take default judgment; and (3) its failure to answer the complaint constitutes excusable neglect.

## STANDARD OF REVIEW

[¶ 9.] Review of a grant or denial of a motion to set aside a default judgment is well settled. A party may obtain relief from a final judgment upon a showing of good cause. SDCL 15-6-55(c). We review a trial court's decision concerning a default judgment under the abuse of discretion standard remembering that the trial court should exercise its discretion "liberally in accord with legal and equitable principles in order to promote the ends of justice." *In re Estate of Nelson*, 1996 SD 27, ¶¶ 13, 15, 544 N.W.2d 882, 886 (citations omitted). "Ultimately, 'any doubt [should be] resolved in favor of an application to set aside a judgment in order that the case may be tried upon the merits.' " *Roso v. Henning*, 1997 SD 82, ¶ 5, 566 N.W.2d 136, 139 (citing *National Sur. Corp. v. Shoemaker*, 86 S.D. 302, 309, 195 N.W.2d 134, 138 (1972)) (alteration in original).

## DECISION

[¶ 10.] **1. Release of the actual tortfeasor does not preclude pursuit of underinsured motorist benefits.**

[¶ 11.] Initially, Western National argues that Meier could not take a default judgment against McCord because he had been previously fully released from any liability arising out of the accident. Although this argument seems logical, it is contrary to South Dakota law. Further, it is not customary practice in the insurance industry in situations involving both a liability insurer and the injured party's underinsurer. Finally, under the facts of this case, it is disingenuous for Western National to advance this argument.

[¶ 12.] SDCL 58-11-9.4 requires all liability insurance policies sold in South Dakota to provide underinsured motorist coverage. Payments of underinsured motorist benefits are governed by SDCL 58-11-9.5, which provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident *because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon.* Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

(emphasis added). Furthermore, SDCL 58-11-9.6 states:

> The issuer of the underinsured motorist coverage is subrogated to any amounts the insurer so pays and, upon payment, has an assignment of the judgment against the other party to the extent of the money paid. Refusal of the issuer of the underinsured motorist coverage to waive its statutory right of subrogation does not constitute bad faith. A liability insurer may pay the limits of the liability policy it issued without obtaining a complete release on behalf of its insured. Such payment does not abrogate any continuing duty to defend and does not constitute bad faith.

These statutes simply require the underinsurer to pay benefits to its insured for the amount of damages, if any, that exceeds the recovery from the liability insurer up to its policy limits. SDCL 58-11-9.6 grants

the underinsurer a statutory right of subrogation against the tortfeasor in the amount the underinsurer pays. The liability insurer has a continuing duty to defend until it obtains a complete release on behalf of its insured. SDCL 58-11-9.6.

[¶ 13.] This Court has recognized that before the liability insurer obtains a release for its insured it actively represents the same interests as the underinsurer, which is to minimize the recovery against its insured. *Weimer v. Ypparila*, 504 N.W.2d 333, 335 (S.D.1993). After the liability insurer obtains a complete release, the underinsurer must step in and represent its own interests. *Id.* Thus, we recognize that a release of the liability insurer's insured (generally the defendant) does not prevent the plaintiff from proceeding against the defendant for purposes of determining the amount of underinsured motorist benefits the plaintiff may recover from its own underinsurer. *Id.*

[¶ 14.] Most important to the disposition of this issue is the contradiction between what Western National argues on appeal and what its adjuster, Schwartz, testified to at the second hearing. On appeal the company contends it believed the matter was resolved because it had received Meier's release of McCord. This argument stands in stark contrast to Schwartz's testimony. On cross-examination the following exchange occurred between Hoy and Schwartz:

Q: Now, what is the purpose of a Schmidt release as you understand it?

A: The purpose of a Schmidt release in the state of Minnesota is to notify there may be an underinsured motorist claim.

Q: And did you okay a Schmidt release to be signed by the plaintiff?

A: Yes.

Q: And that means that as far as the underinsured carrier goes the claim is still open as far as you understand how things are handled in Minnesota?

A: As I understand it, yes.

Q: And do you think that's also true in South Dakota?

A: I treated it as the same notice of notification of procedure.

Q: Okay. So you would have--would agree with me then that at the time you okayed that Schmidt release you knew that Atlanta Casualty was going to pay their $25,000 minimum, and the claim was still left open as far as any potential claim with Western National?

A: There may be a potential underinsured motorist claim.

Clearly, Schwartz, after eighteen years in the business of insurance, was familiar with this practice in the insurance industry. We have often stated that parties may not claim a "better version" of the facts on appeal than they testified to below. *Vaughn v. John Morrell & Co.*, 2000 SD 31, ¶ 36, 606 N.W.2d 919, 926 (citing *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 16, 557 N.W.2d 764, 768). Meier's release of McCord did not preclude him from pursuing McCord for the purpose of determining underinsured motorist benefits. *Weimer*, 504 N.W.2d at 335; *Schmidt v. Clothier*, 338 N.W.2d 256, 262-63 (Minn. 1983).

[¶ 15.] **2. Refusal to set aside default judgment was an abuse of discretion.**

[¶ 16.] The trial court rejected Schwartz's testimony and subsequently refused to set aside the default judgment because it found he purposefully misrepresented the facts in his initial affidavit to the court. Schwartz's initial affidavit indicated he had no contact with Meier's attor-

ney or office personnel after he returned the original release mistakenly sent to him on September 13, 1999. Before the second hearing, which was scheduled to help the judge decide between the parties' conflicting affidavits, Schwartz filed a supplemental affidavit to correct his flawed initial affidavit.

[¶ 17.] Schwartz's supplemental affidavit admitted he had phone contact with office personnel of Meier's attorney on September 15, 1999. The trial court was not particularly concerned with the date discrepancy. The court, however, was concerned with Schwartz's complete failure to mention the final phone conversation in his initial affidavit. In that conversation, Hoy's office personnel contend they advised Schwartz of the consequences of Western National's failure to plead or make an offer and Schwartz indicated the company would not defend the suit. The trial court questioned Schwartz about this failure and did not find his answers credible. We agree and further note that Schwartz's supplemental affidavit asserts that he did not have access to the claim file when he executed his initial affidavit; however, on questioning from the court he indicated that he "mislooked" at the "documentation laying there." After further examination by the court, Schwartz admitted he had copies of the documentation at the time he signed the initial affidavit. Schwartz attempted to draw a meaningless distinction between having copies of the documents and the originals. Although we share in the circuit court's disgust with the discrepancies in Schwartz's testimony, it was, nonetheless, an abuse of discretion to refuse to set aside the default judgment given the facts in this case and the strong preference that cases be decided on the merits.

[¶ 18.] SDCL 15-6-55(b) governs default judgments and provides in pertinent part, "[i]f the party against whom judgment by default is sought has *appeared* in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." SDCL 15-6-55(b)(1) (emphasis added). We recently examined what constitutes an "appearance" for default judgment purposes. *Roso*, 1997 SD 82, 566 N.W.2d 136. *Roso* involved an automobile accident. *Id.* ¶ 2. A jury awarded the injured passenger damages and his attorney then attempted to settle the injured driver's claim, but the insurer refused the offer. *Id.* The driver's attorney had the defendant served, however, the defendant failed to send the summons and complaint to its insurer. *Id.* ¶ 3. The injured driver's attorney applied for a default judgment, but she failed to give notice to the defendant. *Id.* The court entered judgment for the injured driver. *Id.* We reversed the trial court's denial of defendant's motion to set aside the default judgment because we found the defendant (or their representative) did make an appearance entitling them to notice of a default judgment hearing. *Id.*

[¶ 19.] *Roso* recognized that courts "take an expansive view toward 'appearance,' in the context of default judgment, often finding it when a party shows an intent to defend." *Id.* ¶ 7 (citations omitted). Where a party has not made any formal appearances or filed papers, a court will look for evidence of active representation. *Id.* (citations omitted). We must remember that default judgment is an "extreme remedy." *Id.* ¶ 8 (citing *Tank v. Munstedt*, 504 N.W.2d 866, 868-69 (S.D. 1993)). It should only be granted when " 'the adversary process has been halted because of an essentially unresponsive party.' " *Id.* (citations omitted). However, a party may be relieved from a default judgment if they can show that they "(1) acted

with excusable neglect and (2) had a meritorious defense." *Smith v. Hermsen*, 1997 SD 138, ¶ 10, 572 N.W.2d 835, 838 (citing *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994); *Clarke v. Clarke*, 423 N.W.2d 818, 820-21 (S.D.1988)).

[¶ 20.] Parties who suffer a default judgment may seek relief under SDCL 15-6-60(b)(1), which permits relief from a final judgment for excusable neglect. In this context, we have stated that excusable neglect must be "of a nature that would cause a reasonably prudent person under similar circumstances to act similarly." *Peterson v. La Croix*, 420 N.W.2d 18, 19-20 (S.D.1988). Although defining excusable neglect is elusive and difficult, we must interpret it liberally to ensure that cases are decided on the merits. *Smith*, 1997 SD 138, ¶ 10, 572 N.W.2d 835, 838 (citations omitted).

[¶ 21.] When considering cases involving SDCL 15-6-60(b), we must remember its purpose is " 'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.' " *Hrachovec*, 516 N.W.2d at 311 (citations omitted). "[E]lementary fairness demands of courts a tolerant exercise of discretion in evaluating excusable neglect." *Roso*, 1997 SD 82, ¶ 12, 566 N.W.2d at 141 (citing *City of Lemmon v. U.S. Fidelity & Guar.*, 293 N.W.2d 433, 437 (S.D.1980)).

[¶ 22.] Western National argues it made an appearance as defined in *Roso* and that its failure to file an answer was excusable neglect. It points to the contacts between Schwartz and Meier's attorney and his office personnel as constituting an appearance entitling them to notice of intent to take default judgment prior to the date of the default judgment. It also contends that Meier's failure to notify it that he had filed his summons and complaint against McCord with the clerk of courts is the reason it failed to answer. Meier hid this from the company until he had obtained a default judgment. We agree.

[¶ 23.] First, in *Roso*, we pointed out that "earnest negotiations" occurred evidenced by the active communication between the parties. *Roso*, 1997 SD 82, ¶ 10, 566 N.W.2d at 141. Similarly, active communication flowed between Meier's attorney and Western National including correspondence and telephone conversations. These informal contacts between Meier's attorney and Company began July 23, 1999, when it received a copy of the summons and complaint, and continued through September 15, 1999. As *Roso* instructs, we must treat these informal contacts with " 'a degree of common-sense flexibility.' " 1997 SD 82, ¶ 10, 566 N.W.2d at 140 (citations omitted). We find that the informal contacts that occurred here constitute an appearance under SDCL 15-6-55(b) and entitled Western National to notice of Meier's intent to take a default judgment in this case.

[¶ 24.] Second, since Western National did not file a responsive pleading it must show (1) it acted with excusable neglect and (2) it has a meritorious defense in order to obtain relief from the final judgment. *Smith*, 1997 SD 138, ¶ 10, 572 N.W.2d at 838. The company argues it did not answer because it was unaware that Meier had filed his summons and complaint with the clerk of courts. Although Schwartz testified that he understood, "[t]here may be a potential underinsured motorist claim," after he consented to Meier's settlement with McCord, Meier did not inform the company that he had filed the summons and complaint. Meier filed the lawsuit just two days after the last contact with Western National. Considering that Western National was not a

named party to the suit, Meier should have notified the company that he filed his lawsuit because "cases should ordinarily be decided on the merits." *Roso,* 1997 SD 82, ¶ 12, 566 N.W.2d at 141 (citing *City of Lemmon,* 293 N.W.2d at 437).

[¶ 25.] It is also important to note that McCord and his liability insurer appeared and negotiated a release with Meier. Thus, Western National had no knowledge it needed to answer a lawsuit because Meier failed to advise it that he had subsequently filed his lawsuit against McCord. In addition, although informal contacts occurred between Meier and Western National over several months, which we find constitute an appearance under SDCL 15-6-55(b), Meier failed to give the company the required notice of his intent to take default judgment. This failure is grounds to set aside the default judgment. *National Sur. Corp.,* 86 S.D. 302, 311, 195 N.W.2d 134, 139 (S.D.1972).

[¶ 26.] As to the meritorious defense factor, Western National points out that Meier showed little evidence of his damages. We agree. Meier had special damages totaling $1907.60 plus a wage loss claim totaling $1050. His personal affidavit is the only evidence the circuit court had before it when entering default judgment. Western National contends that besides the statement in Meier's affidavit stating he should be awarded $125,000 nothing else would indicate that Meier would be likely to obtain a substantial award. Again, we agree.

[¶ 27.] Under this factor, Western National need only make a prima facie showing of a meritorious defense. *National Sur. Corp.,* 86 S.D. at 310, 195 N.W.2d at 138-39. Given the scant evidence of damages and the fact that the default judgment award is over sixty times Meier's medical expense, we find the company sustained the required prima facie showing. We are puzzled that the circuit court would enter such a substantial judgment on such limited evidence. We recognize that under SDCL 15-6-55(b) the circuit court may conduct hearings to determine the amount of damages or answer any other questions necessary before awarding a default judgment. Although the circuit court is not required to hold such hearings, a hearing to determine the amount of damages would have been advisable here considering the miniscule evidence of damages.

[¶ 28.] Reversed and remanded.

[¶ 29.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.