#30485-aff in pt & rev in pt-JMK
**2024 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FAWNA GOFF,                                    Plaintiff and Appellee,

    v.

TERRY GOFF,                                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN FITZGERALD
Judge

\* \* \* \*

MINDY R. WERDER of
Lynn, Jackson, Shultz
   & Lebrun, P.C.
Sioux Falls, South Dakota                      Attorneys for defendant and
                                               appellant.


CASSIE J. WENDT
Philip, South Dakota                           Attorney for plaintiff and
                                               appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **09/11/24**

#30485

KERN, Justice

[¶1.] Fawna and Terry Goff were married in 2015 and had one child together, M.G. However, in late 2021, Terry left the marital home for work in Texas. After a time, it became clear that he did not intend to return to South Dakota and was pursuing a relationship with a new romantic partner. During this time, Fawna allowed M.G. to travel to Texas for an extended visit with Terry, after which he refused to return the child to South Dakota. Fawna filed for divorce and a trial was held in August 2023. Ultimately, the circuit court granted Fawna a divorce on the grounds of adultery, awarded primary legal and physical custody of M.G. to Fawna, set child support, divided the parties' property, and made a partial award of attorney fees to Fawna. Terry appeals. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

[¶2.] Fawna and Terry Goff were married on June 27, 2015, and lived together in Meade County, South Dakota. Together, Terry and Fawna have one child, M.G., who is currently seven years old.[1] In November 2021, they purchased a trailer home in Sturgis from Terry's parents. As part of the purchase agreement, Terry's parents received a $50,000 mortgage on the trailer home.[2] During the marriage, Terry was employed as a truck driver—making approximately $2,000 every two weeks—and would regularly go south for work during the winter.

---

1. Fawna also has a son from another relationship.

2. According to Terry, he would inherit the trailer free and clear in the event of his parents' deaths. However, there are no documents in the record supporting the existence of the sale, mortgage, or Terry's executory interest.

-1-

[¶3.]     In December 2021, Terry left the marital trailer home to work in Texas for the winter. Although Fawna remained in the trailer home, Terry made the mortgage payments to his parents and the property was titled solely under his name in December 2022. Initially, Fawna understood that he would be returning in the spring. However, Terry eventually told her that "he had full-time work [in Texas] year-round and that he . . . didn't want to be together anymore." Terry now lives in Texas City, Texas.

[¶4.]     Terry admits that, around June 2022, he entered into a romantic relationship with another woman, Chelsey Callaway. According to Fawna, Terry and Callaway had been roommates since late 2021, but "it became pretty evident the spring of 2022 that it was more than just a roommate." Nevertheless, on October 16, 2022, Fawna allowed M.G. to visit Terry in Texas for an extended period of visitation. Fawna's original agreement with Terry was that M.G. would return to South Dakota in March 2023, in time to start school in Sturgis. However, this did not occur. Terry claims that, at this time, "Fawna's home was unclean, unsafe and a health hazard" and that it was in the best interests of M.G. to live with him.

[¶5.]     On March 8, 2023, Fawna filed a verified complaint for divorce, seeking a divorce and primary physical custody of M.G. Terry was served with this complaint on March 21, 2023. On June 25, 2023, Fawna asked Terry to bring M.G. to the funeral of a relative in Oklahoma so that she could take her back to Sturgis thereafter. Terry, however, refused and Fawna filed a motion for emergency order or emergency pickup order on July 5, 2023, seeking a court order for the immediate

return of M.G. On July 18, 2023, the circuit court granted Fawna immediate physical custody of M.G. and ordered the return of the minor child to South Dakota. In addition, Fawna was granted legal and physical custody until further order of the court. Although Terry was made aware of the court's order on the day that it was entered, he still did not return M.G.

[¶6.] Next, on July 20, 2023, Terry filed for divorce in Harris County, Texas, and Fawna was served on the same day. Meanwhile, Terry failed to file any response or appearance in South Dakota within sixty days and Fawna moved for default judgment pursuant to SDCL 15-6-55(b). Terry filed a special appearance in South Dakota on July 24, 2023, for the purpose of contesting jurisdiction and denying the allegations in the complaint.[3]

[¶7.] The circuit court held a hearing on Fawna's motion for default judgment on August 1, 2023. Terry was noticed and appeared telephonically and pro se. At the beginning of the hearing, the court noted that it had jurisdiction over M.G.'s custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* SDCL 26-5B. Terry replied that "basically what you all are doing is charging me with kidnapping." In response, the court clarified the purpose of the hearing:

> COURT: Okay, let's make it real simple here, Mr. Goff.
>
> GOFF: Okay.

---

3. The circuit court found that on July 24, 2023, Terry filed an answer and supporting declaration for UCCJEA and an affidavit of mailing in the South Dakota case. At the time of trial, it had not been served on Fawna or her counsel.

COURT: Number one, this is the time and place set for a default hearing. They're seeking judgment against you for default, meaning that you were served in March of this year with a Summons and a Complaint and you didn't serve an Answer, you did not deny any of the claims and those claims are made for getting a divorce, for property settlement and for the child to be in the sole custody or the custody of Ms. Goff. Those are the issues.

You've served some sort of an Answer here very late in the proceedings in July, and so the question to you is, do you want to have a trial before the Court on those issues in the divorce?

GOFF: No sir. What I'd like to do is go ahead and deal with the plea on the divorce.

COURT: All right. Then I'm going to have Ms. Wendt put on her client and she can make application for what she wants as far as a divorce, child custody and also property settlement, and then we can just go ahead and we'll call this a trial on the issues rather than a default hearing.

[¶8.] After this colloquy, both Fawna and Terry testified as witnesses in support of their respective claims. At the conclusion of the testimony, the court entered oral findings of fact and conclusions of law granting a decree of divorce to Fawna on the grounds of adultery. The court divided the parties' property awarding each their clothing, personal effects, vehicles in their possession along with the associated debt, bank and retirement accounts in their own names, and ordered each party to pay their own medical and credit card debts. Terry was awarded his camper and the court ordered Fawna to make arrangements to gather Terry's remaining property in Sturgis for his designee to pick up. The court also ordered that the Sturgis trailer house, valued at $50,000, be immediately transferred from Terry's name to the name of Terry and Fawna (Geigle). Terry was

further ordered to pay half of the "mortgage" payment to Terry's parents for three years, after which the court ordered that the "home either be sold or that one party buy the other person's equity out."

[¶9.] Regarding child custody and visitation, the court granted primary physical and legal custody of M.G. to Fawna, with Terry having "liberal visitation" that would occur only in South Dakota. In addition, Terry was required to pay monthly child support of $711 and arrearages at that amount from January 2022 through August 2023 totaling $12,798. The court ordered that Terry and Fawna would be proportionally responsible for M.G.'s expenses and Terry would continue providing M.G.'s health insurance coverage, with pro rata contribution from Fawna. The court entered written findings of fact, conclusions of law and a judgment and decree of divorce on August 11, 2023. Terry appeals, raising four issues, which we restate as follows:

    I.    Whether the circuit court abused its discretion in conducting a trial on the merits at the default judgment hearing.

    II.    Whether the circuit court abused its discretion in calculating arrearages.

    III.    Whether the circuit court abused its discretion in limiting Terry's visitation to the State of South Dakota.

    IV.    Whether the circuit court abused its discretion in awarding attorney fees.

## Analysis

[¶10.] We first address a procedural irregularity that resulted in the absence of any responsive brief from Fawna. Terry filed a notice of appeal on October 10, 2023, and his brief on December 8, 2023. Fawna failed to timely file a responsive

brief with this Court. Fawna moved for and received an extension to file her brief by February 6, 2024. Fawna's brief was served on opposing counsel and received by the clerk's office on February 7. The clerk's office rejected the brief as untimely. On February 23, 2024, Fawna filed a motion for waiver of default, requesting that this Court extend the filing deadline based on good cause. The Court granted this motion, ordering that "*appellant* shall file the appellee's brief on or before April 8, 2024." No such brief was filed and, as a result, this Court has been presented with no arguments from Fawna.

[¶11.] We note at the outset that this Court's order could have potentially caused confusion, as it directed the *Appellant* to refile Fawna's responsive brief on or before April 8, 2024. Regardless, "failure of the appellee to file a brief does not automatically translate to victory for the appellant. Appellant still has the burden of showing that the findings of fact are clearly erroneous or that the conclusions of law are incorrect." *Wichman v. Shabino*, 2014 S.D. 45, ¶ 5 n.3, 851 N.W.2d 202, 203 n.3 (quoting *Hawkins v. Peterson*, 474 N.W.2d 90, 92 (S.D. 1991)). We must therefore still analyze the assignments of error urged by Terry.

[¶12.] Turning to the standard of review in child custody cases, this Court "review[s] child custody decisions under the abuse of discretion standard of review." *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 13, 826 N.W.2d 627, 633 (alteration in original). "In addition, the trial court's decisions regarding child support and the division of property are reviewed for an abuse of discretion." *Id.* Furthermore, "[a] circuit court's ruling on the allowance or disallowance of costs and attorney fees is

also reviewed by this Court under the abuse of discretion standard of review." *Id.* (alteration in original).

[¶13.] "An abuse of discretion is 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Id.* ¶ 14, 826 N.W.2d at 633 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822). "In the context of reviewing custody decisions, '[a]n abuse of discretion occurs . . . when the trial court's review of the traditional factors bearing on the best interests of the child is scant or incomplete.'" *Id.* (alteration in original) (quoting *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843).

### I. Whether the circuit court abused its discretion in conducting a trial on the merits at the default judgment hearing.

[¶14.] Terry argues that the circuit court conducted a "trial by ambush" by considering the merits of the divorce action at the default hearing. Undoubtedly, "[a] default judgment is an extreme remedy, and should only be granted when 'the adversary process has been halted because of an essentially unresponsive party.'" *Roso v. Henning*, 1997 S.D. 82, ¶ 8, 566 N.W.2d 136, 140 (citation omitted). However, a default judgment was not granted here. Indeed, rather than proceeding to a hearing on Fawna's motion for a default judgment, Terry, who was allowed to appear telephonically from Texas, was informed by the court that Fawna was seeking a default judgment against him. The court asked Terry if he wanted to have a trial and he specifically told the court that "[w]hat I'd like to do is go ahead and deal with the plea on the divorce." Accordingly, the court placed both parties under oath and proceeded with a court trial. His request having been granted,

Terry now—without citing any authority directly on point—argues that the court should have only considered Fawna's motion for default at the hearing. His acquiescence in this procedure waives his claim of error herein. *See Taylor Realty Co. v. Haberling*, 365 N.W.2d 870, 874 (S.D. 1985) (holding that assent to a jury procedure waived any assertion of error on appeal).

[¶15.]     Even if his argument on this point is not waived, in order to successfully oppose the motion for default judgment, Terry would have been required to establish that he "(1) acted with excusable neglect, and (2) had a meritorious defense." *Roso*, 1997 S.D. 82, ¶ 11, 566 N.W.2d at 141. On the second prong, "[t]he party seeking relief must present facts either by answer or affidavit from which it could be inferred that upon a trial he would be entitled to a judgment more favorable to himself than the judgment from which he is seeking relief." *Id.* ¶ 13, 566 N.W.2d at 142.

[¶16.]     Thus, even if the court had only considered the default motion, Terry would have been required to present at least some showing on the merits of the divorce action. In short, Terry cannot argue that he was without notice that the merits of the divorce action would be considered, at least to some extent, at the hearing. In addition, at the hearing, Terry displayed a detailed knowledge of the marital estate and provided arguments regarding custody and child support, which is logical considering his request to proceed.

[¶17.]     Nevertheless, we conclude that Terry, by not objecting at the hearing, waived any arguments against the circuit court's consideration of the merits of the divorce action.

### II. Whether the circuit court abused its discretion in calculating arrearages.

[¶18.]        Terry argues that the circuit court erred by calculating arrearages without considering M.G.'s residence in Texas under his care from October 2022 through July 2023. The circuit court granted Fawna arrearages from January 2022 through August 2023 in the amount of $12,798. The court calculated this amount by multiplying the monthly amount of child support—$711—by 18 months.[4] Terry argues that he should be given credit for the 11 months that M.G. spent in his care, for a total arrearages reduction of $7,821. The court did not cite any authority or make specific factual findings regarding its method of calculating the arrearages.[5] Yet, there are a number of statutory provisions that are applicable in such circumstances.

[¶19.]        When a parent departs from the marital home, SDCL 25-7-6.1 provides guidance for courts in establishing a child support obligation amount:

> The parents of a child are jointly and severally obligated for the necessary maintenance, education, and support of the child in accordance with their respective means. Until established by a court order, the minimum child support obligation of a parent who fails to furnish maintenance, education, and support for his child, following a continued absence from the home, is the obligor's share of the amount shown in the support guidelines, commencing on the first day of the absence. For the purposes of this section, "continued absence from the home," means that the parent or child is physically absent from the home for a period of at least thirty consecutive days, and that the nature of the

---

4.    We note that this appears to be an incorrect calculation because January 2022 through August 2023, inclusive, would total 20 months.

5.    The court did however cite SDCL 25-7-6.16 regarding Fawna's responsibility for certain health care expenses and SDCL 25-5-18.1 for the duration of the child support.

absence constitutes family dissociation because of a substantial severance of marital and family ties and responsibilities, resulting in the child losing or having a substantial reduction of physical care, communication, guidance, and support from the parent.

[¶20.] Here, Terry was absent from the marital home beginning in January 2022. However, the record demonstrates that Terry continued to support M.G. during his absence. He continued to pay the mortgage payments for the trailer home, kept M.G. on his health insurance plan, and sent weekly packages with clothes and other items. However, most importantly, he was the primary caretaker for M.G. from October 2022 through the summer of 2023. Based on this record, it is evident that Terry's absence did not constitute "a substantial severance of marital and family ties and responsibilities, resulting in [M.G.] losing or have a substantial reduction of physical care, communication, guidance, and support from [Terry]." As a result, the court, even if it cited SDCL 25-7-6.1, would have erred in awarding arrearages.

[¶21.] Further, SDCL 25-7-6.19 provides that "if, by agreement of the parties, the obligor had primary physical custody of the child for more than four consecutive months, the court may credit the obligor for child support arrearages which accumulated during the period the obligor had actual custody of the child." Thus, even if Terry owed arrearages pursuant to SDCL 25-7-6.1, the circuit court abused its discretion by not considering the numerous months that Terry had physical custody of M.G. in Texas.[6] In such an analysis, the court could, in its discretion,

6.    We also note SDCL 25-7-6.24 provides that "[i]f the parents of a child have agreed to a change in the physical custody of the child without the court's

(continued . . .)

-10-

take note of Terry's ultimate recalcitrance in returning M.G. to Fawna, even when faced with a court order. However, the fact remains that Terry cared for M.G. for a substantial period with the consent of Fawna.

[¶22.] In addition, SDCL 25-7-6.10 states that "[d]eviation from the schedule in § 25-7-6.2 must be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors: . . . (4) [on] [t]he effect of agreements between the parents regarding extra forms of support for the direct benefit of the child." From January 2022 to August 2023, in addition to caring for M.G. for approximately eleven months, Terry made the mortgage payments for the marital home and also provided M.G.'s health insurance. These were largely with the knowledge and consent of Fawna. Terry brought this information to the attention of the court at trial. The circuit court abused its discretion in not considering a deviation, especially for the months that Terry cared for M.G. with Fawna's consent.

### III. *Whether the circuit court abused its discretion in limiting Terry's visitation to the State of South Dakota.*

[¶23.] "The trial court has broad discretion in awarding custody of minor children and likewise visitation rights; therefore, the trial court's decision can only be reversed upon a clear showing of an abuse of that discretion." *Dunham v.*

_____

(. . . continued)
approval, the parent who relinquished physical custody may be ordered to pay child support to the parent who gained physical custody of the child even though the custody order has not been modified to reflect the change in custody." Terry did not request child support payments from Fawna while M.G. resided with him in Texas.

*Sabers*, 2022 S.D. 65, ¶ 23, 981 N.W.2d 620, 632–33. In determining visitation, "[o]ur brightest beacon remains the best interests of the child." *Pieper v. Pieper*, 2013 S.D. 98, ¶ 15, 841 N.W.2d 781, 785. "The trial court may, but is not required to, consider the following [*Fuerstenberg*] factors in determining the best interests and welfare of the child: parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, separating siblings, and substantial change of circumstances." *Schieffer*, 2013 S.D. 11, ¶ 17, 826 N.W.2d at 634 (alteration in original); *see also Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 22, 591 N.W.2d 798, 806–07. "In most instances, 'it will be in the best interests of children that they receive the love, affection, training, and companionship of their noncustodial parent.'" *Pieper*, 2013 S.D. 98, ¶ 15, 841 N.W.2d at 786 (quoting *Chicoine v. Chicoine*, 479 N.W.2d, 891, 893 (S.D. 1992)). This is not true, however, "where the evidence establishes that exercise of visitation will be harmful to the welfare of the children; in this event, the right of the noncustodial parent to visit with his children can be limited, or, under extreme circumstances, prohibited altogether." *Id.*

[¶24.]     Here, the court ordered that the child be immediately returned to South Dakota in the emergency pickup order issued on July 18, 2023, and served on Terry in Texas. The court also ordered mediation to determine the parameters of Terry's visitation with the child pursuant to SDCL 25-4-56. Terry testified that he was aware of the order but did not return the child because he did not have the funds to bring her to South Dakota. Terry also did not comply with the ordered mediation. Because of Terry's noncompliance with the emergency order the court

granted Fawna physical and legal custody of M.G. with Terry being allowed "liberal visitation" only in the State of South Dakota. The court also noted that, contrary to the provisions of the South Dakota parenting guidelines at the time, Terry introduced Callaway to M.G. when they had only been dating for four months.

[¶25.]     However, the circuit court failed to make any findings regarding whether the visitation parameters were in the best interests of M.G. Thus, the court did not make sufficient findings to support its order limiting Terry's visitation to the State of South Dakota. As a result, we reverse the visitation determination and remand for further consideration and findings by the circuit court.

### IV.     *Whether the circuit court abused its discretion in awarding attorney fees.*

[¶26.]     Terry argues that the circuit court abused its discretion in awarding attorney fees by "fail[ing] to properly consider relevant factors." "Generally, trial courts may award attorney fees in cases involving divorce, support, or alimony." *Nickles v. Nickles*, 2015 S.D. 40, ¶ 34, 865 N.W.2d 142, 154.

> First, the court must determine what constitutes a reasonable attorney's fee. This requires consideration of (1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required. Second it must determine the necessity for such fee. That is, what portion of that fee, if any, should be allowed as costs to be paid by the opposing party. This requires consideration of the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Id.* (quoting *Urbaniak v. Urbaniak*, 2011 S.D. 83, ¶ 31, 807 N.W.2d 621, 628). "The circuit court's allowance or disallowance of attorney's fees is reviewed for abuse of discretion." *Id.* (citing *Terca v. Terca*, 2008 S.D. 99, ¶ 18, 757 N.W.2d 319, 324).

[¶27.]    Here, the circuit court ordered Terry to pay 50% of Fawna's attorney fees. According to the court, it "considered Defendant's failure to return the child, Defendant's filing of a matter in Texas without proper jurisdiction, Defendant's failure to timely file an Answer and the need for trial in making this determination." However, the court made no specific findings on these factors and did not even address the other considerations set out by this Court.

[¶28.]    "This Court has consistently required trial courts to enter findings of fact and conclusions of law when ruling on a request for attorney fees. Without findings of facts and conclusions of law there is nothing to review." *Id.* ¶ 35, 865 N.W.2d at 154. "The trial court is required to make specific findings based upon the factors." *Id.* In light of this Court's decision to reverse and remand on the issue of arrearages, on remand, the circuit court should reconsider the award of attorney fees under the two-step analysis set forth by this Court.

## Conclusion

[¶29.]    We hold that Terry waived any claim that the circuit court abused its discretion by conducting a trial on the merits at the default hearing. However, by not considering the numerous months of care and other support that Terry provided to M.G. after leaving the marital home, the circuit court abused its discretion in calculating the amount of arrearages. In addition, the circuit court failed to make the necessary factual findings and legal conclusions for the visitation determination

#30485

and the award of attorney fees.  As a result, we reverse and remand for a new calculation of arrearages and further findings regarding the best interests of M.G. and the award of attorney fees.

[¶30.]          JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.